**NORDBERG DIVISION OF REX CHAIN-BELT INC., Plaintiff,**

v.

**HUDSON ENGINEERING CORPO-RATION, Defendant.**

**Civ. A. No. 72–C–610.**

United States District Court,
E. D. Wisconsin.

Aug. 16, 1973.

Steven E. Keane and Robert A. Christensen, Milwaukee, Wis., for plaintiff.

Laurence C. Hammond, Jr., and Ross R. Kinney, Milwaukee, Wis., and Robert E. Morse, Jr., Houston, Tex., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge:

The plaintiff, a Wisconsin corporation, is attempting to recover an unpaid portion of the contract price for the sale of a combustion gas turbine and other associated products to the defendant, a Texas corporation. Subject matter jurisdiction is based on diversity of citizenship. Defendant has moved to dismiss this action for lack of personal jurisdiction. Though the issue is ably argued by defendant and is uncommonly close, the motion is denied.

The pleadings and affidavits reveal the following facts. The defendant Hudson Engineering Corporation is an engineering contracting company which builds gasoline plants and related industrial buildings. Its principal place of business is in Houston, Texas, and it operates in Texas, Louisiana, and other gas producing states not including Wisconsin. Apparently it has had no contact with Wisconsin outside this case. The plaintiff Nordberg Division of Rex Chainbelt Inc. is in the business of manufacturing machinery, including heavy duty engines, which are sold to customers throughout the country. Its principal place of business is in Milwaukee, and it has sales employees permanently located in several major cities including Houston.

In November 1969, plaintiff's sales employee in Houston, John Morphis, solicited defendant's employees through personal calls and correspondence. All negotiations were conducted in Houston. On January 22, 1970, a contract was entered into for the sale of a Nordberg Model G–55–2 combustion gas turbine with associated products and services. The turbine was manufactured in Milwaukee and was to be installed in Houston. The price was $566,979.00 for the turbine plus $19,032.88 for additional services.

In the fall of 1970, while the turbine was being built, defendant's personnel traveled to Milwaukee to observe certain tests. Defendant's personnel again visited Milwaukee in March 1972 to confer with plaintiff about necessary repairs. Plaintiff's Milwaukee personnel apparently went to Houston to discuss the construction and installation of the turbine on several occasions after the contract was signed. Believing the turbine defective, defendant has refused to pay the last $75,730.78 of the amount due; hence, this suit.

In a diversity case such as this where the defendant was not served within the state, plaintiff must first establish that the courts of Wisconsin would have jurisdiction over the defendant pursuant to Wisconsin law. Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963); Wright, Law of Federal Courts, § 64 (2d ed. 1970). Subsections 5(b) and (d) of § 262.05, the Wisconsin long-arm statute, appear to reach defendant and satisfy this requirement since they provide jurisdiction:

"(5) * * * In any action which:

* * * * * *

"(b) Arises out of services actually performed * * * for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant; or

* * * * * *

"(d) Relates to goods, * * * shipped from this state by the plaintiff to the defendant on his order or direction; * * * *"

The question remains whether these sections, as applied to defendant, violate constitutional standards of due process or, in other words, whether defendant's contacts with Wisconsin are so insignificant that subjecting defendant to suit here would offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Supreme Court has said:

" * * * The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. [Citations omitted.] Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. * * * *" International Shoe Co., supra, at 319, 66 S.Ct. at 159.

In cases like the one here where the defendant's sole contact with the forum state arises from the single contract at issue, the latitude and limits of due process have been suggested by McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In McGee, the Court upheld jurisdiction over an out-of-state insurance company whose only contact was the solicitation and sale of an insurance policy in the forum state and the out-of-state receipt of payments in connection with that policy. In Hanson, the Court found that jurisdiction did not exist over an out-of-state trust company even though the trust settlor, domiciled in the forum state, helped administer the trust from the forum state and received income from the trust in the forum state. Noting that the trust company's contacts

with the forum state resulted solely from the settlor's emigration to the forum state after the trust had been established, the Court indicated why jurisdiction was lacking:

"\* \* \* The application of that [personal jurisdiction] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. \* \* \*" Hanson v. Denckla, supra, at 253, 78 S.Ct. at 1240.

■ Defendant argues with notable force that under these standards it is not enough that the plaintiff-seller was from Wisconsin, that the turbine was manufactured in Wisconsin, and that the defendant-buyer's personnel visited Wisconsin after the contract was made. Defendant distinguishes this case from that in which the out-or-state defendant is the seller of goods and the plaintiff the in-state buyer. There the defendant will often have solicited business in the forum state, and the state will possess a particularly keen interest in providing its consumers a convenient forum to combat overreaching. Even without solicitation, one who invades the markets of the forum state to sell his products has sufficiently penetrated the state from an economic perspective to subject himself to its jurisdiction. Requiring out-of-state buyers to defend away from their homes will often be inequitable. Defendant invokes the specter of mammoth mail order companies, such as Sears, Roebuck and Company, subjecting all of their customers to suit in the state where the product was manufactured. See, e. g., Geneva Industries, Inc. v. Copeland Construction Corp., 312 F. Supp. 186 (N.D.Ill.1970). Indeed, defendant contends, such a result would follow a fortiori from upholding jurisdiction in this case, for here all solicitation and negotiation took place in Texas and defendants never even corresponded through the mail to Wisconsin.

On the other hand plaintiff points out that the distinctive treatment afforded out-of-state buyers and sellers reflects, at least in part, the facts that most sales transactions are between a seller corporation and an individual consumer seeking to satisfy his personal noncommercial needs, and that sellers in general have more resources to defend themselves in out-of-state litigation than do buyers. Unlike the typical consumer transaction, the buyer and seller here were large and sophisticated companies with the ability to litigate in a foreign forum and with roughly equal bargaining power exercised in active negotiations. Hence, the equitable considerations called for in *International Shoe* and *McGee* lack a significant role in this case. Moreover, the *Hanson* requirement of substantial and deliberate contact with the forum state is met. The transaction, far from being minor or common, was of such magnitude that it was likely to have an impact on the commerce of Wisconsin. The mutual visits of the parties' personnel to the other's place of business were also predictable outgrowths of the magnitude and complexity of the transaction and the lengthy period allotted for the turbine's manufacture.

The reasons for taking jurisdiction in a case, such as this, and declining to do so in the "mail order" situation were articulated by the Sixth Circuit Court of Appeals in In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir. 1972). The passivity of the mail order customer, who often merely places an order, accepts the seller's price and terms, and submits payment, minimizes his involvement in the transaction and, hence, his contact with the forum state. But here the buyer took a much more active role in the transaction and blurred the distinction between himself and the typical seller:

"\* \* \* To the extent the buyer vigorously negotiates, perhaps dic-

tates, contract terms, inspects production facilities and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears. \* \* \* " *In-Flight Devices Corporation,* supra, at 233.

A customer of a mail order house, be it an individual or a small company engaged in a one-state operation, is also more likely to be unprepared to defend itself in a foreign forum than is a company, like defendant here, which transacts a substantial amount of interstate business. When almost all its business is conducted in its home state, a customer of a mail order house does not expect to be forced to travel to a distant forum. It thus lacks experience in out-of-state litigation. When its expectations are disappointed, it is caught unprepared psychologically and, perhaps, financially. In contrast, defendant here operates in Louisiana and other oil producing states as well as Texas. Necessarily it is prepared to litigate outside of Texas. If it wished to create an expectation of litigating in Texas alone, it was free to negotiate a stipulation in the contract to that effect.

Again emphasizing the central role of the defendant's expectations, the Court in *In-Flight Devices Corporation* scrutinized the actual conduct of the defendant to gauge the significance which the activities in the forum state had for it. As in the case here, the defendant had sent its personnel into the forum state to inspect production and to discuss implementation of the contract. Such actions exhibited greater involvement with the forum state than if a buyer similarly situated chose merely to write a letter relating to these matters. In our case defendant's second visit to Wisconsin in March of 1972 is an added suggestion of its ongoing concern with the Wisconsin activities.

In short, *In-Flight Devices Corporation* provides several grounds for distinguishing between the case here and the "mail order" situation. Both cases may contain in-state sellers and out-of-state buyers, but *International Shoe* jettisoned the wooden analysis that would make that similarly conclusive. Rather *International Shoe* mandated precisely the approach employed in *In-Flight Devices Corporation,* a common sense sifting of the facts and circumstances of each case in light of the realities of the transaction, the defendant's expectations, and the concerns of equity.

Defendant's prime authority is *Orton v. Woods Oil and Gas Co.,* 249 F.2d 198 (7th Cir. 1957). The defendant oil and gas company had retained plaintiff's attorneys for certain services which were performed in the forum state. Though the nature of the services did not require a visit of the defendant's employees to the forum state, the parties discussed the services on the telephone. The total amount claimed by the two plaintiffs was less than $30,000. Plaintiff's total fee was not disclosed. While admitting the similarity of *Orton* to the case here, I can hardly ignore the enormous difference in the magnitude of the services. Moreover, *Orton* was apparently decided without the guidance of *McGee,* the case which adopted one of the more expansive views of personal jurisdiction.

▮ It should be reiterated that defendant's presence in a foreign forum was precipitated by its own activities in the foreign state. It had significant contacts with the state in which the forum is located. It undertook a massive transaction with a company it knew was based in Wisconsin for a machine which it must have known would probably be built in Wisconsin. That the transaction would precipitate further contact with Wisconsin was almost inevitable. Indeed, the contacts might well have gone beyond the few visits that actually occurred.