**SPIEGEL, INC., Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 75–1919.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1976.

Decided Aug. 9, 1976.

---

Patrick W. O'Brien, Chicago, Ill., Basil J. Mezines, Washington, D. C., for petitioner.

Gerald Harwood, Asst. Gen. Counsel, Mark W. Haase, Atty., F. T. C., Washington, D. C., for respondent.

Before FAIRCHILD, Chief Circuit Judge, BAUER, Circuit Judge, and CAMPBELL, Senior District Judge.[*]

BAUER, Circuit Judge.

Essentially the question before us is whether the Federal Trade Commission ("FTC") has the power to prevent large retail businesses from suing customers for delinquent credit accounts in a court distant from the consumer's residence. The FTC ordered that petitioner Spiegel "cease and desist from instituting suits except in the county where the defendant resides at the commencement of the action, or in the county where the defendant signed the contract sued upon." Spiegel brings this appeal of the Commission's order.

■ There is no dispute as to the facts of the case. Spiegel admitted all of the material facts contained in the FTC complaint.[1] The complaint charges that Spiegel violated Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45,[2] which prohibits unfair business practices, by instituting collection suits in the Circuit Court of Cook County, Illinois, against retail credit mail order purchasers who reside in states other than Illinois.

Spiegel is a Delaware corporation with its office and principal place of business in Chicago, Illinois. It is a catalog retailer engaged in the advertising, offering for sale, and distribution of clothes, household goods, appliances, tools, tires, and various other articles of merchandise. In the course of its mail order business, it receives orders in Illinois from purchasers in various states and ships products to them in their home states. It regularly extends credit to consumers in order to facilitate purchase of the products.

■ Previously, in the course of its collection of retail credit accounts, Spiegel regularly used Illinois courts to sue allegedly defaulting retail mail order purchasers who resided outside of Illinois. The practice of filing suits in Illinois was terminated in February 1973 because this collection method proved unsatisfactory to Spiegel.[3] In filing these collection suits Spiegel used the Illinois long-arm statute[4] to establish jurisdiction. Spiegel voluntarily dismissed those actions where the defendant raised an objection to the inconvenience of the forum.

---

[*] The Honorable William J. Campbell, United States District Court for the Northern District of Illinois, is sitting by designation.

1. Spiegel's action in admitting the factual allegations was not intended to constitute an admission of the ultimate factual or legal conclusions reached by the Commission. We appreciate this conduct by Spiegel's attorneys in attempting to facilitate the litigation and, on appeal, have treated their answer according to their limited intent.

2. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(6) states *inter alia:*

"The Commission is empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

3. According to Spiegel's brief this was due to the fact that judgments in Illinois, as in many other states, are not self-executing and require supplementary proceedings in other jurisdictions in order to collect the judgment. See, *e. g., Riley v. New York Trust Co.*, 315 U.S. 343, 349, 62 S.Ct. 608, 86 L.Ed. 885 (1942). A defendant may raise the issue of lack of personal jurisdiction in his home state to enforce a judgment obtained in another jurisdiction. *See also Hanson v. Denckla*, 357 U.S. 235, 255, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

4. Ill.Rev.Stat. Ch. 110, § 17 provides *inter alia :*

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
(a) The transaction of any business within this State . . . .."

Not only has the Illinois statute been used as a model by a number of other states, but more than one half of the states have enacted a long-arm statute in one form or another.

Of course, in order to object the consumer had to travel to the Illinois court or obtain local counsel, an act which was often impractical considering the amount in dispute in most cases.

Many of the customers sued by Spiegel live outside the State of Illinois. They received Spiegel's catalogs and advertising material in their homes and executed the contract to purchase in their home states. Almost all of them have no pertinent contact within the State of Illinois other than their dealings with Spiegel.

The administrative law judge determined that the distance, cost and inconvenience of defending such suits in Illinois placed a virtually insurmountable burden on the out-of-state defendants to appear, answer and defend. Subsequently the Commission concluded that Spiegel's collection practices through the use of the Illinois courts was offensive to clearly articulated public policy and oppressive and injurious to consumers.

On appeal Spiegel principally argues: that its conduct was legal and appropriate under Illinois law; that its conduct does not amount to a violation of Section 5 of the Act; that the Commission exceeded its authority in deciding the case on the basis of consumer's due process rights; that the Commission's order is burdensome and unwarranted since Spiegel has represented that it has stopped suing its customers in distant courts.

## I. ASSUMING *ARGUENDO* THAT SPIEGEL'S CONDUCT WAS PROPER UNDER ILLINOIS LAW, THE FTC MAY STILL FIND A VIOLATION OF SECTION 5.

Under Illinois law Spiegel's conduct may have been perfectly proper. Whether it is unfair to hold a consumer answerable in a foreign forum for a mailorder credit account in arrears is a difficult jurisdictional question. It is clear, however, that in some cases jurisdiction would be proper.

Modern day long-arm jurisdiction stems from a landmark decision by the Supreme Court in *International Shoe Co. v. Washington*, 362 U.S. 310, 66 S.Ct. 154, 90 L.Ed.

95 (1945). Therein, Chief Justice Stone summarized the development of the concept of *in personam* jurisdiction in the following oft-quoted passage:

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain [minimal] contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

The "minimal contacts" standards of *International Shoe*, however, did not provide for a simple, mechanical test. Instead the courts have adopted a case-by-case approach in evaluating the contact of the defendants with the forum. The Sixth Circuit recently attempted a review of the major decisions since *International Shoe* in *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972). The Court set out a three-part test to determine whether jurisdiction was proper:

1. the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;

2. the cause of action must arise from the defendant's activities in the forum state; and

3. the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

In applying this triple test, however, the Court warned at p. 226:

"It is imperative that it be understood that the flexibility, and therein the virtue, of the *International Shoe* test is retained in the third condition and no mechanical consideration of the first two elements of the test can eliminate the need for an appraisal of the overall circumstances of each case if jurisdiction is to be found."

This Court has also adopted a similar position in *Hutter Northern Trust v. Door*

*County Chamber of Commerce,* 403 F.2d 481 (7th Cir. 1968). Therein, Judge Swygert wrote:

"A basic consideration which underlies the law relating to jurisdiction over nonresidents is that the evidence of sufficient contacts within a state to avoid violation of due process by substituted service depends upon the particular facts of each case. *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 671 (1961).

\* \* \* \* \* \*

Whether sufficient minimum contacts exist cannot be answered by applying a formula or rule of thumb, but by ascertaining what is fair and reasonable in the circumstances of the particular situation."

As a consequence of these decisions it is impossible to make an abstract determination that an Illinois court would have proper jurisdiction over a suit against a defaulting mail order purchaser. In some decisions, where the case-by-case method has been employed, there are rulings which might favor jurisdiction in situations similar to the instant problem.[5] On the other hand, there is some language in *In-Flight Services v. Van Dusen Air, Inc., supra,*[6] and other cases[7] which state that it would be unfair to find jurisdiction in a foreign forum over a suit based simply on a mail order contract.

Assuming *arguendo* that jurisdiction under Illinois law is proper, we still believe that the FTC has the power to enjoin Spiegel from bringing the suits. In *Federal Trade Commission v. Sperry & Hutchinson Co.,* 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972), the Supreme Court left no doubt that the FTC had the authority to prohibit conduct that, although legally proper, was unfair to the public. In *Federal Trade Commission v. Sperry & Hutchinson Co., supra,* the defendant argued that it was beyond the power of the Commission to declare unfair its practice of successfully prosecuting trading stamp exchanges in state and federal courts. Its argument was also based on the theory that since the corporate conduct was within the technical bounds of the law it could not be prohibited by the FTC. The Supreme Court, after reviewing the legislative history and leading cases dealing with Section 5 of the Act, concluded:

"[L]egislative and judicial authorities alike convince us that the Federal Trade Commission does not arrogate excessive power to itself if, in measuring a practice against the elusive, but congressionally mandated standard of fairness, it, like a court of equity, considers public values beyond simply those enshrined in the letter or encompassed in the spirit of the antitrust laws." 405 U.S. at 244, 92 S.Ct. at 905.

---

5. See *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1971) (a single telephone call based on a contract to be performed in Illinois); *Ziegler v. Hodges,* 80 Ill.App.2d 210, 224 N.E.2d 12 (2d Dist. 1967) (a single mailing and telephone communication); *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) (defendant's primary contacts with the forum state were by mail); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (solicitation of a single life insurance contract by mail). In each of these cases jurisdiction was upheld based upon a finding of sufficient contact with the forum state.

6. The Court stated at p. 227, footnote 13:

"[I]t would certainly be unfair to hold consumers answerable in a foreign forum for unpaid bills simply on the basis of a 'mail order contract.'"

7. In *Geneva Industries, Inc. v. Copeland Construction Co.,* 312 F.Supp. 186, 188 (N.D.Ill. 1970), Judge Will stated in *dicta:*

"The notion that any customer of an Illinois based mail order house such as Sears Roebuck or Montgomery Ward would be subject to the jurisdiction of Illinois courts is obviously violative of the most minimal standard of minimum contacts and the fundamental structure of the federal system."

See also, *Nordberg Div. of Rex Chainbelt, Inc. v. Hudson Engineer Corp.,* 361 F.Supp. 903 (E.D.Wisc.1973); *Conn v. Whitmore,* 9 Utah 2d 250, 342 P.2d 871 (1959); *United States Railway Equipment Co. v. Port Huron and Detroit Railroad Co.,* 58 F.R.D. 588 (N.D.Ill.1973); *Gelderman v. Dussault,* 384 F.Supp. 566 (N.D. Ill.1974); *Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079, 1084 (1st Cir. 1973).

Previously, this Court, in *Peerless Products v. Federal Trade Commission,* 284 F.2d 825 (7th Cir. 1960), *cert. denied* 365 U.S. 844, 81 S.Ct. 804, 5 L.Ed.2d 809 (1960), rejected the argument that a practice, legal under local law, could not be banned under Section 5. In *Peerless* local ordinances sanctioned the use of merchandise punchboards. The Court upheld the FTC's power to hold their use unlawful, stating:

"Unless Congress specifically withdraws authority in particular areas, the Commission, upon its general grant of authority under 15 U.S.C.A. § 45(a)(6), can restrain unfair business practices in interstate commerce even if the activities or industries have been the subject of legislation by a state or even if the intrastate conduct is authorized by state law [citations omitted]."

■ In determining whether Spiegel's challenged practices are unfair under Section 5 of the Act, the Commission remained faithful to its previously announced criteria. A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.[8]

In this case, since the facts are not in dispute, the Commission only had to determine whether Spiegel's policy of using state long-arm statutes against distant mail order customers violated public policy and was injurious to consumers. In making that determination the Commission concluded:

"[S]piegel's practice of suing its out-of-state mail order customers in Illinois courts is patently offensive to clearly articulated public policy, intended to guarantee all citizens a meaningful opportunity to defend themselves in court.

\* \* \* \* \* \*

[R]espondent's use of the Cook County forum, . . . forces the consumer who wishes to defend to appear in a courtroom hundreds or thousands of miles from home, at a cost in travel alone which may exceed the amount in controversy. The option of hiring a lawyer who would be able to file a motion contesting jurisdiction is likely to be equally unviable. Nor do we think it lessens the damage done to argue that judgments unfairly obtained by Spiegel would be rejected if it attempted to collect on them. Affirmative efforts to defend a collection suit can also impose costly and unaccustomed burdens on the consumer, and in any event there are many injurious uses which can be made of improper judgments, short of execution, such as sullying credit records . . . ."

■ Spiegel challenges the Commission's conclusion by arguing that it has no factual basis in the record. Admittedly the factual record in this case is sparse. Nevertheless, the Supreme Court has previously stated that the Commission may draw reasonable inferences from the record. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Federal Trade Commission v. Pacific States Paper Ass'n,* 273 U.S. 52, 63, 47 S.Ct. 255, 71 L.Ed. 534 (1927); *Corn Products Refining Co. v. Federal Trade Commission,* 324 U.S. 726, 739, 65 S.Ct. 961, 89 L.Ed. 1320 (1945); *Spiegel, Inc. v. Federal Trade Commission,* 411 F.2d 481 (7th Cir. 1969).

---

**8.** See footnote 5 of the Supreme Court's decision in *FTC v. Sperry & Hutchinson, supra,* which approved the criteria employed in this case. It states at 405 U.S. at 243, 92 S.Ct. at 905:

"The Commission has described the factors it considers in determining whether a practice that is neither in violation of the antitrust laws nor deceptive is nonetheless unfair:

'(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory or other established concept of unfairness;

(2) whether it is immoral, unethical, oppressive, or unscrupulous;

(3) whether it causes substantial injury to consumers (or competitors or other businessmen).' "

■ We believe that the inferences upon which the Commission's conclusion is built are reasonably supported by the record.

The Commission correctly characterized Spiegel's customers as "consumers" since retail purchasers of clothing, household goods, and other types of merchandise described in the complaint are, by definition, consumers. Moreover, paragraph 4 of the complaint specifically identifies the persons to whom Spiegel extends credit as "consumers." It was also fair for the Commission to conclude that Spiegel's customers are "the quintessential passive buyers who . . . sit by until the goods are delivered." The record clearly shows that Spiegel's customers are out-of-state mail order purchasers, almost all of whom received Spiegel's catalogs or other advertising matter and executed purchase orders or contracts in their home states, and had no pertinent contacts with the State of Illinois other than their dealings with Spiegel.

Similarly, it was reasonable for the Commission to conclude that Spiegel's suits involve relatively small amounts, since it is unlikely that many, if any, mail orders of the types of merchandise described in the complaint involve transactions valued in "thousands of dollars," as Spiegel now argues on appeal. It is equally unlikely that the suits involve cumulations of numerous small debts, since neither Spiegel nor any other rational mail order retailer would long continue to extend credit to distant consumer accounts already believed to be in default.

The Commission's observations concerning the difficulties and costs which stand in the way of consumers who wish to defend against suits in a distant forum are matters of common knowledge. Where suits involve relatively small debts, the choice of retaining counsel is not a practical alternative, even in one's home town, and, since travel costs alone may exceed the amount in controversy, a *pro se* appearance in an out-of-state forum is virtually foreclosed by economic considerations.

## II. THE COMMISSION EXCEEDED ITS AUTHORITY IN MAKING A CONSTITUTIONAL DETERMINATION.

■ A reading of the Commission's opinion indicates that it based its decision in part upon the finding that Spiegel's practice of filing lawsuits against mail order credit customers in Cook County under the long-arm statute violated those customers' rights to due process. Generally, federal administrative agencies are without power or expertise to pass upon the constitutionality of administrative or legislative action. *See, e. g., Oesterich v. Selective Service Board,* 393 U.S. 233, 242, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); *Public Utilities Comm'n of State of California v. United States,* 355 U.S. 534, 539, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); *Engineers Public Service Co. v. Securities and Exchange Commission,* 138 F.2d 936, 952–53 (D.C.Cir. 1943), *vacated as moot,* 332 U.S. 788, 68 S.Ct. 96, 92 L.Ed. 370 (1947); *Finnerty v. Cowen,* 508 F.2d 979, 982 (2d Cir. 1974).

■ As we stated previously, the question of whether Spiegel's use of the long-arm statute amounts to a deprivation of the due process clause can only be made on a case-by-case basis. Thus the Commission[9] erred in finding that Spiegel's conduct *per se* amounted to a violation of the consumer's right of due process.

Nevertheless, we have decided to enforce the Board's order because we believe that Spiegel's conduct amounted to a violation of Section 5 even though it may not amount to a deprivation of due process. Moreover, as the *FTC v. Sperry & Hutchinson, supra,* case teaches, the Commission may find a

9. One member of the Commission (Stephen Nye) filed a separate concurring opinion suggesting that the Commission should have avoided the constitutional issue. He correctly stated:

"It is an important principle of our jurisprudence that constitutional questions should be avoided in a case which can be resolved on statutory or common law grounds [citing Frankfurter, Law & Politics, 24 (1939)]. That principle should apply with special force to an administrative agency, which has no particular competence to address issues of constitutional dimension." .

practice to be unfair within the meaning of Section 5 even though the same practice has repeatedly withstood attack in the courts.[10]

## III. THE COMMISSION'S ORDER IS IN-APPROPRIATE IN RELATION TO THE VIOLATIONS FOUND.

The final order entered by the Commission provides in part:

"It is ordered that respondent, in connection with the collection of retail credit accounts in or affecting commerce as 'commerce' is defined in the Federal Trade Commission Act, do forthwith cease and desist from instituting suits except in the county where the defendant resides at the commencement of the action, or in the county where the defendant signed the contract sued upon. This provision shall not preempt any rule of law which further limits choice of forum which requires, in actions involving real property or fixtures attached to real property, that suit be instituted in a particular county."

The Commission issued this broad order despite the fact that the allegations of the complaint only charged Spiegel with bringing suit against out-of-state residents in the Circuit Court of Cook County, Illinois. The complaint contains no allegations as to Spiegel's practice with respect to Illinois credit customers. In effect, the order proscribes Spiegel's use of Illinois' venue provisions although the FTC made no charge that Spiegel had abused such provisions.

 While the courts have granted the FTC discretion in formulating the type of order that is necessary to cope with the unfair practices found, *Jacob Spiegel Co. v. Federal Trade Commission*, 327 U.S. 608, 66

S.Ct. 758, 90 L.Ed. 888 (1946), and Congress has entrusted the Commission with primary responsibility for fashioning orders, *Federal Trade Commission v. National Lead Co.*, 352 U.S. 419, 77 S.Ct. 502, 1 L.Ed.2d 438 (1952), the form of the order is nevertheless subject to judicial review. The remedy selected by the FTC must bear a reasonable relationship to the unlawful practices found to exist. *Federal Trade Commission v. Colgate-Palmolive Co.*, 380 U.S. 374, 392, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965). The prohibitions of an order must be "clear and precise in order that they may be understood by those against whom they are directed." *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 726, 68 S.Ct. 793, 815, 92 L.Ed. 1010 (1948).

 In this case the opinion of the Commission contains no reference to any venue problem which might serve to justify the breadth of the order's prohibition to include suits against Illinois residents. The rationale relied upon by the majority of the Commissioners to find that Spiegel had engaged in an unfair trade practice within Section 5 of the Federal Trade Commission Act dealt exclusively with Spiegel's use of long-arm jurisdiction and does not support the extension of the remedy to include suits filed in Illinois against Illinois mail order customers.

The scope of the order entered by the FTC against Spiegel is not reasonably related to the practices involving the Illinois long-arm statute which the FTC condemned. Neither the complaint nor the Commission's opinion mention or discuss any allegedly unfair abuse of venue by Spiegel against Illinois customers.[11] Under

---

10. A business practice which is not in violation of the common law or the criminal statutes may still be prohibited if it is contrary to public policy. *See National Candy Co. v. Federal Trade Commission*, 104 F.2d 999 (7th Cir. 1939), where this Court affirmed an order of the Commission against the use of a candy lottery, stating:

"[A] method of competition which is contrary to the established public policy of the United States is an unfair method of competition within the intent and meaning of section

5 of the statute. A violation of public policy is an injury to the public, and it is in the public interest to prevent the use of a method of competition which is contrary to an established public policy of the Federal Government, even if injury to competitors be not alleged or proved." 104 F.2d at 1006.

11. The FTC contends that this entire line of argument is improper since it was not formally argued in the proceedings below. An examination of the record, however, reveals that there was no indication that the order would be con-

these circumstances, the FTC's order, to the extent that it may be construed to apply to suits brought in Illinois against Illinois residents, is inconsistent with the complaint and is not supported by the reasoning in the Commission's opinion. Therefore we are of the opinion that the Commission's order should not be enforced insofar as it relates to Illinois consumers who are sued in a county courthouse which is a reasonable distance from their place of residence.[12]

■ In modifying the order we do not seek to usurp the role of the Commission. Our effort is not to rewrite the Commission's order but rather to enforce the order as it is supported by the facts. Justice requires that enforcement be granted only if the order bears a reasonable relation to the violation charged.

As this Court has previously stated in *Allen B. Wrisley Co. v. Federal Trade Commission,* 113 F.2d 437, 442 (7th Cir. 1940): "We now come to the challenged order itself, which, we think, is broader than the issue tendered by the complaint, and the theory on which the case was tried. As was said in *Federal Trade Commission v. Gratz,* 253 U.S. 421, 427, 40 S.Ct. 572, 574, 64 L.Ed. 993: '. . . . Such an order should follow the complaint; otherwise it is improvident and, when challenged, will be annulled by the court.' "

■ The Commission's order in this case also requires Spiegel to "prepare and maintain a summary of suits instituted, pending, terminated, or acted upon subsequent to judgment, involving the collection of retail credit accounts . . . ." for a period of two years. The Commission seeks to justify this burdensome record-keeping requirement of its order by arguing that it is impossible for the FTC to monitor Spiegel's suits across the country.

However, we believe the order should be commensurate with the violation. Accordingly, enforcement of this portion of the Commission's order will be granted only insofar as it requires Spiegel to report suits instituted in a county other than where the defendant resides, or where the defendant signed the contract sued upon.[13] The reason for this choice of forum should also be explained in the report. Such a modification of the order should relieve Spiegel of cumbersome reporting, while at the same time allowing the FTC to monitor the suits

strued to include suits against Illinois residents until the Commission's final order issued. Consideration by an appellate court of an issue not previously raised before the Commission is not always prohibited by the rules. As the Supreme Court stated in *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941):

"There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. See *Blair v. Oesterlien Machine Co.,* 275 U.S. 220, 225, 48 S.Ct. 87, 88, [72 L.Ed. 249] (1927).

Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice."

12. The difficulty with the Commission's order is that it prohibits Spiegel from suing, in DuPage County, someone who lives in Cook County. Actually it might be more convenient for the consumer to defend the action in DuPage County. Since the complaint did not allege any venue problems with suits against Illinois residents we see no reason for the FTC to abridge Spiegel's right to bring suit wherever the law allows. On appeal the FTC argues that if the order is not enforced in *toto* Spiegel could sue a Cook County resident in Cairo, Illinois, hundreds of miles away from his residence. In this extreme example, such conduct by Spiegel would amount to a violation of Section 5. However, absent such an allegation in the complaint, the Commission has no authority to issue a blanket order.

13. The report should include any suits instituted in a county other than where the defendant resides, or in a county where the defendant signed the contract sued upon, brought either by Spiegel, a collection agency, or other agent operating on Spiegel's direction.

it seeks to prohibit. In addition, the FTC can determine whether Spiegel is attempting to abuse the venue requirements of Illinois law in its suits against Illinois consumers in counties where they do not reside.

The order of the Commission is enforced as modified.