**Henry MOORE, Leola Moore, Joseph Washington and Dorothy Washington, Plaintiffs,**

**v.**

**LOMAS MORTGAGE USA, Defendant.**

**LOMAS MORTGAGE USA, INC., Counterplaintiff,**

**v.**

**Joseph WASHINGTON and Dorothy Washington, Counterdefendants.**

**No. 90 C 5816.**

United States District Court, N.D. Illinois, E.D.

May 18, 1992.

Daniel A. Edelman, Cathleen M. Combs, Francine Schwartz and Tara G. Redmond, Law Offices of Daniel Edelman and Lawrence Walner, Lawrence Walner & Assoc. Ltd., Chicago, Ill., for plaintiffs.

James R. Daly, Suzanne S. Greene and Robert C. Micheletto, Jones, Day, Reavis & Pogue, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

This cause is rooted in a class action suit brought against Lomas Mortgage USA, Inc. (counterplaintiffs here), a mortgage service company. Plaintiffs (counterdefendants here) hold mortgages that are owned or serviced by Lomas.[1] The mortgages require class members to deposit 1/12 of annual taxes and insurance in a non-interest bearing escrow account each month. In their complaint plaintiffs allege that Lomas requires the class members to deposit escrow accounts in excess of the amount required by their mortgages, thereby obtaining the use of large amounts of money to which Lomas is not entitled.

Lomas has filed a class action counterclaim. The counterclaim seeks a declaration (1) that Lomas is entitled to impose a 4% late charge for delinquent payments on federally guaranteed mortgage loans calculated on the entire past due amount, including principal, interest, taxes and insurance; and (2) that imposing late charges does not violate the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev. Stat. ch. 121½, para. 262 (the "Illinois Consumer Fraud Act"). The Washingtons and the class members contest Lomas' entitlement to assess late charges on delinquent payments of principal and interest and taxes and insurance. They contend that late charges should be assessed only on delinquent monthly payments of principal and interest.

This case is presently before the Court on Lomas' motion for summary judgment on its counterclaim. For the following reasons Lomas' motion is granted.

1. For simplicity, the Court will refer to the counterplaintiffs as "Lomas" or "defendant"; the counterdefendants as "the Washingtons" or "plaintiffs."

2. After reciting the amount of the loan and the interest rate, the Washingtons' mortgage note states: "the said principal and interest to be

## I. UNDISPUTED FACTS

The Washingtons have a fixed-rate mortgage and note written on standard printed forms issued by the Department of Veterans Affairs ("VA"). The VA guaranteed the mortgage. Lomas, or its predecessor, the Lomas & Nettleton Company, has serviced the Washingtons' mortgage since at least 1980. The mortgage provides that Lomas may assess a late charge of no more than 4% for delinquent mortgage payments. Lomas computes late charges on delinquent payments calculated on the aggregate past due amount for principal, interest, taxes and insurance ("PITI") under VA-guaranteed mortgages.

The "whereas" clause at the beginning of the mortgage states:

That whereas the Mortgagor is justly indebted to the Mortgagee, as is evidenced by a certain promissory note executed and delivered by the Mortgagor, in favor of the Mortgagee ... in the principal sum of Twenty One Thousand Four Hundred and 00/100 Dollars ($21,400.00) payable with interest at the rate of Eight and 50/100 per centum (8.50) per annum on the unpaid balance until paid, and made payable to the order of the Mortgagor ... the said principal and interest being payable in monthly installments of One Hundred Sixty–Five and 21/100 Dollars ($165.21) ...[2]

As to the language in the mortgage authorizing the assessment of late charges, the mortgage provides:

Together with, and in addition to the monthly payments of principal and interest payable under the terms of the note secured hereby, the Mortgagor will pay to the Mortgagee as Trustee ... the following sums:

(a) A sum equal to the ground rents, if any, next due, plus the premiums that

payable in monthly installments ..." of $165.21. The note also states that "[i]f there be any deficiency in the payment of any such installment of principal and interest ... the holder of this note may ... declare all the unpaid principal and accrued interest of said note immediately due and payable."

will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus taxes and assessments next due on the mortgaged property ... less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, taxes and assessments.

(b) The aggregate of the amounts payable pursuant to subparagraph (a) and those payable on the note secured hereby shall be paid in a single payment each month ...

Any deficiency in the amount of any such aggregate monthly payment shall, unless made good prior to the due date of the next payment, constitute an event of default under this Mortgage. At Mortgagee's option, Mortgagor will pay a "late charge" not exceeding four per centum (4%) of any installment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby ...

## II. DISCUSSION [3]

### A. *Interpretation Of Mortgage Contract*

#### 1. The Mortgage Contract

■ This dispute centers around the meaning of the term "installment," as it is used in the Washingtons' mortgage and note. Plaintiffs assert that the loan documents define the word "installment" as the amount of principal and interest only. They observe that in both the mortgage and note, the first use of "installment" is in

reference to the monthly payment of principal and interest. In contrast, plaintiffs continue, the sum of principal, interest, taxes and insurance, or PITI, is referred to in the mortgage as the "aggregate monthly payment." Plaintiffs conclude, therefore, that since "installment" appears initially in reference to the monthly principal and interest payment—$165.21—the reference to 4% of any installment in the late charge provision means 4% of $165.21, not 4% of the aggregate monthly payment.

Lomas rejects plaintiffs' suggestion that the first usage of the term "installment" in the mortgage contract and note defines the term's meaning throughout the mortgage. Noting that there is no definition section in the mortgage or note, Lomas contends that "installment" must be understood by reference to the context in which it appears and any modifying language accompanying the term. For example, in the context of the "whereas" clause, the term "installment" defines the method of payment (monthly) and amount of principal and interest payments ($165.21). But in the late charge provision, installment is not modified by reference to payment of principal and interest. Rather, Lomas argues, the term's meaning is defined in the late charge clause by the discussion of deficiencies in the amount of "aggregate monthly payment[s]," or PITI.

To resolve this dispute, the Court looks first to the contract itself. "If the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over." *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). If, on the other hand, the Court determines that the contract is ambiguous, the Court may employ rules of construction to determine the parties' intention. *In re Estate of Chaitlin*, 179 Ill. App.3d 287, 291 (1st Dist.1989). In addition, the Court may consider extrinsic evi-

**3.** This Court has jurisdiction over the complaint under 28 U.S.C. §§ 1331 and 1332(a). The Court's jurisdiction over the counterclaim is ancillary to its jurisdiction over the complaint under 28 U.S.C. § 1367. Because this is a diversity case, neither party raised an issue as to what state's law to apply, and both parties cite

liberally to Illinois contract law, the Court will apply the substantive law of Illinois, the forum state. *Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426 (7th Cir.1991). The applicable Illinois principles of contract construction will govern our interpretation of the mortgage contract at issue.

dence to interpret an ambiguous contract. *See La Throp v. Bell Federal Savings & Loan Assoc.,* 68 Ill.2d 375, 383, 12 Ill.Dec. 565, 370 N.E.2d 188 (1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978); *City of Clinton v. Moffit,* 812 F.2d 341, 344 (7th Cir.1987). An ambiguous contract's interpretation "is still an issue of law rather than one of fact if any extrinsic evidence ... bearing on that interpretation is undisputed." *City of Clinton,* 812 F.2d at 344. Thus, even when a contract is ambiguous, a case can be decided on summary judgment if no material facts are in dispute. *LaSalle Nat'l Bank v. General Mills Restaurant Group, Inc.,* 854 F.2d 1050, 1052 (7th Cir.1988); *City of Clinton,* 812 F.2d at 344.

The meaning of the term "installment" in the late charge clause of the Washingtons' mortgage contract is ambiguous. The parties' respective arguments demonstrate that, when the contract is construed as a whole, the late charge provision is "reasonably and fairly susceptible to more than one meaning." *Lenzi v. Morkin,* 116 Ill. App.3d 1014, 1016, 72 Ill.Dec. 414, 452 N.E.2d 667 (1st Dist.1983), *aff'd,* 103 Ill.2d 290, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984).[4] Therefore, the Court will look to the uncontroverted extrinsic evidence and applicable rules of contract construction to determine the meaning of the ambiguous late charge clause.

### 2. Extrinsic Evidence

The Washingtons' mortgage is guaranteed by the VA pursuant to 38 U.S.C. § 1810. The mortgage contract specifically incorporates Title 38 and the regulations promulgated thereunder. The mortgage provides:

> If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of the parties hereto, and any provisions of this or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations are hereby amended to conform thereto.

One such regulation, § 36.4311(d) of the Code of Federal Regulations, authorizes lenders to assess late charges on VA mortgages.[5] But, like the Washingtons' mortgage contract, § 36.4311(d) does not specifically define the term "installment." Thus, reference to the applicable federal regulations fails to elucidate the meaning of "installment," as it is used in the late charge clause of plaintiffs' mortgage contract.

■ To bolster its interpretation of "installment," Lomas has presented several VA Solicitor opinion letters and a VA manual outlining loan guaranty policies and procedures. Like Lomas, the VA Solicitor opinion letters and the manual construe the term "installment" as authorizing the calculation of late charges on PITI. Citing authority for the proposition that an agency's interpretation of its own regulations is entitled great weight, *see First Bank of Oak Park v. Avenue Bank & Trust Co. of Oak Park,* 605 F.2d 372, 376 (7th Cir.1979);

---

**4.** The Court recognizes that contract language " 'is not rendered ambiguous simply because the parties do not agree upon its meaning.' " *See FDIC v. W.R. Grace & Co.,* 877 F.2d 614, 621 (7th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990) (*quoting Reynolds v. Coleman,* 173 Ill.App.3d 585, 593, 123 Ill.Dec. 259, 527 N.E.2d 897 (1st Dist.1988)).

**5.** The regulation provides, in pertinent part, that:

> Interest in excess of the rate reported by the lender when requesting evidence of guaranty or insurance shall not be payable on any advance, or in the event of any delinquency or default: Provided, That a late charge not in excess of any amount equal to 4 percent on an

installment paid more than 15 days after due date shall not be considered a violation of this limitation.

38 C.F.R. § 36.4311(d) (1990).

Section 36:4311(d) was promulgated under 38 U.S.C. 1803(c)(1) and 1810(c). Section 1803(c)(1) provides that loans guaranteed under Title 38 "shall be payable upon such terms and conditions as may be agreed upon by the parties thereto, subject to the provisions of this chapter and the regulations of the Secretary issued pursuant to this chapter...." Section 1810(c), which set the maximum amount of guaranty entitlement available to a veteran, was repealed in 1987. Neither § 1803(c)(1) nor 1810(c) defines "installment."

*Homemaker's N. Shore, Inc. v. Bowen,* 673 F.Supp. 238, 240 (N.D.Ill.1987), *aff'd,* 832 F.2d 408 (1987), Lomas argues that the VA "Solicitor's letter should be deemed 'dispositive.'" Defendant's initial brief at 14–15.

*La Throp v. Bell Federal Savings & Loan Assoc.,* 68 Ill.2d 375, 12 Ill.Dec. 565, 370 N.E.2d 188 (1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978), counsels against placing controlling weight on the VA Solicitor's letter or the VA manual. The plaintiffs in *La Throp* filed a class action on behalf of mortgagors whose mortgages were insured by either the Federal Housing Authority ("FHA") or the VA. 68 Ill.2d at 379, 12 Ill.Dec. 565, 370 N.E.2d 188. The plaintiffs claimed that their mortgage contracts, which were on FHA- or VA-prescribed forms, created an express trust for their benefit in which the mortgagee would hold funds to pay their tax and insurance obligations. *Id.* They argued that certain FHA regulations, when construed in light of the FHA's interpretation of those regulations, supported a finding of an express trust. *Id.* at 384–85, 12 Ill.Dec. 565, 370 N.E.2d 188.

The *La Throp* court rejected the plaintiffs' contention that the regulations "must be construed in light of the FHA's own applicable interpretations." *Id.* at 387, 12 Ill.Dec. 565, 370 N.E.2d 188. Refusing to rely on several sections of the FHA's Mortgagee's Guide, the court noted that "it is undisputed that administrative interpretations (as distinguished from administrative regulations) do not have the force and effect of law." *Id.* at 387, 12 Ill.Dec. 565, 370 N.E.2d 188.[6] Because "the Mortgagee's Guide was published after the forma-

tion of the contract in question, and as the applicable FHA regulations do not clearly require the creation of a trust, we believe the plaintiff's reliance upon the FHA regulations and interpretations in the construction of this contract is misplaced." *Id.* at 388, 12 Ill.Dec. 565, 370 N.E.2d 188.

For reasons similar to those in *La Throp,* this Court declines to resolve the ambiguity in plaintiffs' mortgage contract solely on the basis of the VA's interpretation of the applicable regulations. As in *La Throp,* the applicable administrative regulations fail to resolve the ambiguity in the subject contract. It is only by resort to VA counsel opinions and the VA manual that Lomas finds support for its interpretation of what "installment" means in the late charge clause. Since, under *La Throp,* 68 Ill.2d at 387–88, 12 Ill.Dec. 565, 370 N.E.2d 188 opinions of agency counsel and agency manuals "do not have the force and effect of law," defendant's contention that the VA's interpretation is "dispositive" is erroneous.[7]

■ The Court will, therefore, look to applicable principles of contract construction for further guidance in resolving this dispute. Not surprisingly, the parties cite different rules of construction as controlling under the circumstances. Plaintiffs rely on *contra proferentum,* which holds that "when the words of a contract have been chosen by one party and another merely assents to those words, that fact alone may tip the balance against the party drafting the contract." *Franklin Life Ins. Co. v. Commonwealth Edison Co.,* 451 F.Supp. 602, 616 (S.D.Ill.1978), *aff'd,* 598 F.2d 1109 (7th Cir.1979) (per curiam), *cert. denied,* 444 U.S. 900, 100 S.Ct. 210, 62

---

**6.** The court also observed that "certain opinions of departmental counsel ... 'do not have the force or effect of regulations.'" *Id.* 68 Ill.2d at 387–88, 12 Ill.Dec. 565, 370 N.E.2d 188 (*quoting Gibson v. First Federal Savings & Loan Assoc.,* 504 F.2d 826, 830 (6th Cir.1974)).

**7.** We share the *La Throp* court's discomfort with "the implicit assertion that Federal regulations can substitute for the intent of the private parties to a contract ..." *Id.* 68 Ill.2d at 385, 12 Ill.Dec. 565, 370 N.E.2d 188. The cases cited by Lomas involve disputes over statutory interpretation—cases in which courts usually place sig-

nificant weight on agency interpretations of applicable regulations. Lomas has cited no cases, however, in which a court has even considered an administrative interpretation of regulations in connection with the interpretation of a private contract. Lomas' argument thus begs the question whether courts should accord the same measure of deference to administrative interpretations in disputes over contract interpretation, as they do in cases involving statutory construction. *La Throp* obviates the need to examine that question here.

L.Ed.2d 136 (1979). Plaintiffs argue that under *contra proferentum* "ambiguity in a standard form contract of adhesion, such as the printed form mortgage involved in this case," is resolved against the party who drafted the contract. Plaintiffs' answer brief at 5–6. Therefore, plaintiffs contend, if the Washingtons' mortgage can reasonably be construed in one of two ways, the interpretation favoring the borrower must be followed.

Reliance on the rule of *contra proferentum* is not appropriate in this case. It is widely held that this principle of construction is one of "last resort," properly invoked only "when other canons of interpretation leave a significant area of doubt ..." *Lippo v. Mobil Oil Corp.*, 776 F.2d 706, 714–15 n. 15 (7th Cir.1985); *Franklin Life Ins.*, 451 F.Supp. at 616; *Hurd v. Illinois Bell Tel. Co.*, 136 F.Supp. 125, 134 (N.D.Ill.1955), *aff'd*, 234 F.2d 942 (7th Cir. 1956).[8] Stating that it is "a rule which provides an answer when all other methods of construction and interpretation still leave the contract ambiguous ...," the court in *Franklin Life Ins.*, 451 F.Supp. at 616, declined to rely on *contra proferentum*. Instead, the court relied on the rule that "an interpretation which gives reasonable meaning to all its terms is preferred to an interpretation which leaves some terms to no effect." *Id.* at 614 (citations omitted); *see also Lukasik v. Riddell, Inc.*, 116 Ill. App.3d 339, 347, 72 Ill.Dec. 123, 452 N.E.2d 55 (1st Dist.1983) (court must avoid construction of contract that renders some provisions superfluous). That same rule establishes the controlling interpretation of the Washingtons' mortgage contract.

The term "installment" is modified by the words "principal and interest" at one place in the mortgage documents, yet stands alone in the late charge provision. Defendant correctly notes that if "installment" meant principal and interest throughout the mortgage documents, as plaintiffs insist, then the modifying language "of principal and interest" would be superfluous. It follows, therefore, that the modifying language is necessary only if "installment" means PITI in the late charge clause. This reading of the mortgage documents comports with the rule that a court should adopt an interpretation that gives effect to as much of the contract's language as possible. It is also in accord with the rule that a contract should be construed "by viewing each part in light of the others." *Chicago Board of Trade v. Dow Jones & Co.*, 98 Ill.2d 109, 74 Ill.Dec. 582, 588, 456 N.E.2d 84 (1983). Accordingly, we conclude that plaintiffs' contract authorizes the calculation of late charges on PITI.[9]

**B. *Illinois Consumer Fraud Act***

■ Lomas moves the Court to declare that its practice of calculating late charges on PITI does not violate the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, para. 262 (the "Illinois Consumer Fraud Act"). The Act prohibits "unfair or deceptive acts or practices ... in the conduct of any trade or commerce ..." Ill.Rev.Stat. ch. 121½ para. 262. Section 2 of the Act provides that in determining whether a practice is unlawful as unfair or deceptive, "consideration shall

---

**8.** Corbin explains why courts apply *contra proferentum* only as a last resort. "The rule is hardly to be regarded as truly a rule of interpretation; its application does not help to determine the meaning that the two parties gave to the words, or even the meaning that a reasonable person would have given to the language used. It is chiefly a rule of public policy favoring the underdog." 3 Arthur Linton Corbin, Corbin On Contracts § 559 (1960).

**9.** Plaintiffs rely heavily on *Andrews v. Fleet Real Estate Funding Corp.*, 78 B.R. 78 (Bankr.E.D.Pa. 1987), in advancing their interpretation of the mortgage contract. In a case presenting facts strikingly similar to this case, the *Andrews* court

held that the mortgagor could not calculate late charges on PITI, but by reference to principal and interest only. *Andrews*, 78 B.R. at 79. We decline to follow *Andrews*. As defendant points out, several of the issues presented in this case were not litigated in *Andrews*. The defendant mortgagor in *Andrews* practically conceded defeat on the contract interpretation question. *Id.* at 81. Consequently, the court did not construe the contract in light of administrative interpretations or principles of contract construction— issues vigorously litigated by the parties here. To the extent that the issues presented here and in *Andrews* overlap, we disagree with that court's analysis.

be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." Ill.Rev.Stat. ch. 121½ para. 262, § 2. In the context of section 5(a) of the Federal Trade Commission Act, the Seventh Circuit has interpreted the meaning of "unfair practice" as a practice that "offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Spiegel v. F.T.C.*, 540 F.2d 287, 293 (7th Cir.1976).

The Court has no difficulty concluding that Lomas' practice of calculating late charges on PITI does not run afoul of the Illinois Consumer Fraud Act. Plaintiffs' opposition to defendant's motion presumes that Lomas' late charge practices violate the Washingtons' mortgage contract and thus result in the imposition of unwarranted charges. But we have not concluded, as the court did in *Andrews v. Fleet Real Estate Funding Corp.*, 78 B.R. 78, 83 (Bankr.E.D.Pa.1987), that "late charges were imposed contrary to the terms of the underlying mortgage contract ..." On the contrary, we hold that defendant's method of calculating late charges is authorized under the subject mortgage contract. Moreover, "[s]ection 10(a) of the Act requires that one must be damaged in order to bring a private action." *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716, 718 (N.D.Ill.1988). Since no excessive late charges exist here plaintiffs have not been damaged.

### III. CONCLUSION

Defendant's motion for summary judgment is granted. The Court will issue a declaratory judgment order stating that (1) counterplaintiff (Lomas) is entitled, under the standard VA mortgage forms of counterdefendants and the class members, to impose a 4% late charge for delinquent payments calculated on the entire past due amount, including principal, interest, taxes and insurance; and (2) that Lomas' practice in so calculating late charges on delinquent payments on VA mortgages does not violate the Illinois Consumer Fraud Act.