S. S. DuHamel, Plaintiff-Appellant, v. Board of Education of Community Unit School District No. 1 of County of Christian and State of Illinois, Defendant-Appellee.

**Gen. No. 10,018.**

Second District.

October 19, 1955.

Rehearing denied November 28, 1955.

Released for publication November 28, 1955.

Roy M. Rhodes, of Springfield, and John W. Coale, of Taylorville, for appellant.

Hershey & Bliss, of Taylorville, for appellee; Rolland F. Tipsword, of Taylorville, of counsel.

MR. PRESIDING JUSTICE HIBBS delivered the opinion of the court.

The plaintiff, S. S. DuHamel, appellant here, began an action in the Circuit Court of Christian County against the defendant-appellee, Board of Education of Community Unit School District No. 1 of the County of Christian to recover attorney's fees alleged to be

due and owing by reason of a contract between himself and the Board of Education of such school district. The jury returned a verdict in favor of the defendant. After overruling motions by plaintiff for judgment notwithstanding the verdict and a new trial, judgment was entered upon the verdict.

The first ground urged for reversal of the judgment is that the trial court erred in submitting the cause to a jury. The original complaint filed January 19, 1953 sought a recovery for legal services on a quantum meruit basis. At no time did plaintiff demand a jury trial. On defendant's motion the time to plead was extended, and in due time defendant filed a motion to strike the complaint, which was heard on the following May 13th and denied on May 28th. On June 16th defendant filed its answer and special defenses and concluded with a demand for a jury trial. This demand plaintiff moved to strike. Thereafter defendant filed a reply to such motion and therewith a motion to extend the time to file a jury demand, supported by an affidavit of one of defendant's attorneys, alleging it was his intention and the defendant's at all times to request that the cause be tried before a jury, but through inadvertence and oversight of the affiant such request was not filed at the first appearance of the defendant in the cause. The court entered an order on the motions then pending and found that the defendant's request for a jury trial was not filed in apt time and should be stricken, that the failure to so file was due to inadvertence and mistake on the part of the defendant and its attorney, but that no prejudice to plaintiff would result in allowing defendant's motion to extend the time within which it could file such demand. The order struck the demand filed with the answer and leave was granted to defendant to file its demand instanter. The order further finds the jury demand was so filed.

The question at issue here involves a construction of Sections 64 and 59 of the Civil Practice Act (Pars. 188–

183, Chap. 110, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 104.064, 104.059]) and Paragraph 5 of the Supreme Court Rule 8 (Par. 259.8, Chap. 110, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 105.08]). Section 64 provides: "A plaintiff desirous of a trial by jury shall make his demand for a jury in writing, and file such demand with the Clerk at the time suit is commenced, and a defendant desirous of a trial by jury shall make such demand and file the same at the time of filing his appearance; otherwise such party shall be deemed to have waived a jury." Section 59 provides: "Additional time may be granted on good cause shown, in the discretion of the court and on such terms as may be just, for the doing of any act or the taking of any step or proceeding prior to judgment in any civil action." Paragraph 5 of Supreme Court Rule 8 provides: "The judge, for good cause shown on special motion after notice to the opposite party, may extend the time for putting in any pleading or the doing of any act which is required by the rules to be done, within a limited time, either before or after the expiration of the time."

The case of Roszell v. Gniadek, 348 Ill. App. 341, involved a factual situation almost identical with this cause. There this court reviewed the prior decisions including Stephens v. Kasten, 383 Ill. 127, and concluded at page 346 as follows: "The trial court granted the motion of the defendant (supported by affidavit) for leave to file a jury demand. This was within the sound discretion of the court and a procedure which was not followed in the City of Paris case, supra. Inadvertence and mistake, the basis of the defendant's request for additional time in which to file the jury demand, seems to be slight reason, to be sure, but in view of the Kasten case, supra, it seems to be sufficient, if in the wisdom of the trial judge the motion for additional time in which to file the jury demand is granted."

This case together with Stephens v. Kasten, 383 Ill. 127, were referred to in the recent case of Reese v.

490

Laymon, 2 Ill.2d 614 at page 622, as indicative of the construction theretofore placed on Section 59 of the Civil Practice Act and Paragraph 5 of Supreme Court Rule No. 8.

█ Although we also regard the excuse for the delay set forth in the affidavit of the defendant's attorney, namely, inadvertence and oversight, as a slight reason, for permitting the demand to be filed, we conclude that the discretion exercised by the trial court in permitting the demand to be filed should not be disturbed where, as here, the order in the language of the Kasten case, supra, at page 135 "did not tend to inconvenience the court or parties litigant or prejudice any rights in any manner whatsoever."

A recovery on a quantum meruit basis was the theory of the original complaint. Later, by amendment, the plaintiff abandoned such claim and based his right to relief on an alleged contract. A consideration of the matters at issue on this question necessitates a statement of the salient facts shown by the record.

For some time prior to November 3, 1949 the plaintiff had been employed by the Board of Education on an annual retainer basis of $400, payable $100 each quarter, to advise it on routine business. On the latter date the Board held a special meeting, attended by its members, the superintendent of schools and the plaintiff. At that meeting the Board had under consideration the question of issuing bonds in the amount of $630,000, the selection of a site for a schoolhouse, the purchase of a site so selected and building a schoolhouse as and for a junior high school and a high school. The plaintiff stated to the Board that his annual retainer would not cover payment of the necessary legal services to be rendered in connection with the issuance of bonds, selection of a site, purchase of a site and the building of the schoolhouse, but that it was customary for the bonding house to pay his fee, which would be 1% of the par value of the bonds. The minutes of that meet-

491

ing were prepared by plaintiff and by him delivered to the secretary and made a part of the records of the Board. Such minutes disclose that the purpose of the meeting was to receive and consider and accept bids for the purchase of bonds of the district in the approximate amount of $630,000. The Board proceeded to prepare a statement prescribing the terms and conditions under which bids would be received addressed, "To Whom It May Concern:" Included in the terms and conditions were the following provisions: That the Board would on November 3, 1949 at 7:30 p. m. receive bids for the purchase of bonds in the amount of approximately $630,000 to be issued by the Board, if and when authorized by the electors at an election called for the purpose of voting upon the proposition to issue bonds, select a schoolhouse site, purchase a schoolhouse site and erect a schoolhouse; that each bidder shall bid not less than the par value of the bonds; specify the rate of interest the bonds shall bear; the premium if any to be paid; and that the successful bidder will pay in addition as a part of the purchase price of the bonds 1% of the par value as attorney's fees for services rendered to the Board by its attorney selected by it.

The minutes further disclose that at such meeting bids were received and the lowest and best bid was accepted. The minutes conclude with the adoption of a resolution, as follows: "Mr. Franklin moved that S. S. DuHamel be and he is hereby employed as attorney for said Board to perform all legal duties which the Board shall require in all proceedings of the Board, to issue bonds, select a site, purchase a site and build a schoolhouse in and for the district and to represent the Board in all court proceedings necessary to determine the validity of such bonds, and he shall be paid by the Board for such services a sum equal to 1% of the par value of the bonds issued and 60% of such sum shall be paid to him at the time of the sale and

delivery of such bonds and the receipt of the purchase money therefor; the balance thereof at the time of the completion of the building." The plaintiff, upon the adoption of the resolution, advised the Board he accepted such employment.

The plaintiff proceeded to perform all legal services in preparing the necessary documents to vote upon the following propositions: (1) To build a schoolhouse; (2) To purchase a schoolhouse site; (3) To issue bonds in the sum of $630,000; (4) For the purpose of selecting a site.

The election was held on December 10, 1949, at which time the foregoing propositions failed to carry and no site received a majority of the votes cast. Thereafter and on July 1, 1950 the same propositions were again submitted to a vote of the electors of said district and all of the propositions failed to carry, except a schoolhouse site was selected. On the 4th of September 1951 the Board by mail advised Mr. DuHamel as follows: "At recent meeting of the Board of Education of the Morrisonville Unit it was agreed to make a change in attorney on retainer, effective January 1, 1952. There is no criticism on your work, but it is felt that an attorney closer to Morrisonville will be of much more service to us. In advent of any court proceedings we would still want your counsel."

The plaintiff considered this letter as a termination of his employment on both the retainer basis and under the alleged contract set forth in the minutes of the meeting held November 3, 1949, and did not perform any legal services for the Board after January 1, 1952. The evidence further shows that the Board of Education at the time the above letter was written had abandoned the project of selecting a site, the purchase of a site and the building of a new schoolhouse. In this connection it will be noted that in the letter to the plaintiff his services on a retainer basis were to cease January 1, 1952.

493

The State Superintendent of Public Instruction advised the Board of Education by letter, the date of which does not appear in the record, that the agriculture and industrial arts departments were inadequate and insufficient, and if adequate improvements were not made, the district would no longer receive its "reimbursement" from the State Superintendent. The Board did not take any steps to remedy the deficiencies referred to in the notification from the State Superintendent. Shortly thereafter certain departments of the school were put on probation for one year.

On August 2, 1952 the school district by an election authorized the issuance of $350,000 in bonds to remodel and add to the then existing school buildings at Morrisonville. This did not involve the selection of a site nor the purchase of a site nor the building of a new schoolhouse, and the only proposition voted upon by the electors being the issuance of $350,000 in bonds by the district. With the proceeds the Board built an addition to the Morrisonville schoolhouse (one of the existing school facilities) including therein an agriculture and industrial arts shop, a new gymnasium, a new heating plant and remodelled the old gymnasium, making additional classrooms.

Plaintiff contends that the resolution employing him adopted at the meeting on November 3, 1949 is a complete contract, whereby he was employed to perform any and all legal services in connection with the issuance of any bonds, to provide funds to build a new schoolhouse, select a site therefor and purchase the same, or in connection with the issuance of any bonds to increase the then present facilities of any existing schoolhouse or schoolhouses, even though the same did not involve the selection of a site or the purchase of a site or the building of a new schoolhouse thereon.

The defendant contends that the contract between itself and the plaintiff merely related to the project which the Board then had under consideration, namely,

494

the selection of a schoolhouse site, the purchase of the site, the building of a new schoolhouse and the issuance of bonds in the sum of $630,000; that twice such project had been submitted to the voters and twice defeated, and thereupon the project was completely abandoned; and the alleged contract had no application to the 1952 project whereby the existing schoolhouse was remodelled and certain additions made thereto.

The project under consideration in November 1949 contemplated an entirely new facility at a cost of substantially $630,000. It included the cost of a site of approximately 17 to 20 acres and the erection of a new schoolhouse to afford educational accommodations for a junior and senior high school covering grades seven to twelve, both inclusive. There were to be academic classrooms with a suite of offices for the superintendent, auditorium, a home economics room, a cafeteria, art and music room, gymnasium, boys' and girls' lockers, toilet facilities, general science laboratory, physics and chemistry laboratory, commercial department for typing and bookkeeping, drafting room, agricultural classroom and farm shop. On the second floor there were to be six academic classrooms, library, study hall and speech room.

In the spring of 1952 the Board determined to embark upon another project, no doubt influenced by the fact that the school or some departments thereof by reason of its lack of facilities had been placed on probation by the State Superintendent of Public Instruction. This project did not involve the location of a schoolhouse site nor the purchase of a site nor the erection of a new schoolhouse, but provided an addition to the existing Morrisonville building, including agriculture and industrial arts shop, a new gymnasium, heating plant and the remodelling of the old gymnasium into classrooms.

Plaintiff contends that the resolution adopted by the Board on November 3, 1949 is the contract, the con-

495

■■■

struction of which is for the court and not for a jury; that under such contract he is entitled to recover the sum of $3,500, being 1% of the par value of the bonds issued for the additions to and remodelling of the Morrisonville school.

Defendant contends that while ordinarily the interpretation of a written contract is purely a question of law for the court, but where the contract is not complete upon its face, then extrinsic facts and circumstances are admissible for the purpose of determining what the contract may be, which creates a mixed question of law and fact to be passed on by a jury.

One of the important elements that is left uncertain by the resolution is whether the plaintiff was employed to perform the necessary legal services for the project the Board then had under contemplation, namely, the selection of a site, the purchase of a site, the building of a new schoolhouse and the issuance of bonds in the amount of $630,000 to pay the cost of such project, or was it intended to cover all future building programs of the Board of Education, even though the same merely involved the issuance of bonds to pay the cost of erecting additions to and remodelling of one of the existing school buildings of the district.

■ We believe that the resolution is not complete in itself and the meaning of its terms is doubtful, particularly so in the matter now under consideration by the court. It cannot be said that the resolution of employment is certain as to whether the plaintiff was employed for the particular project then under consideration, namely, the erection of a new schoolhouse in the manner provided by law in such cases. Neither can it be said that the contract is certain that the plaintiff was employed to render legal services in connection with the issuance of bonds to pay the cost of an addition or additions to and remodelling of existing school buildings, in the event that the project to build a new schoolhouse was abandoned. Under these conditions

the determination of the terms of the contract involves a mixed question of law and fact which must be determined by a jury, where one is demanded, as in this case.

■ In Turner v. Osgood Art Colortype Co., 223 Ill. 629, it is said at page 635: "The meaning of a written contract is ordinarily a question of law for the court and not one of fact for the jury, but if the construction depends not only upon the meaning of the words employed but upon extrinsic facts and circumstances, or upon the construction which the parties themselves have placed upon the contract, which is to be proved like any other fact, if such facts are controverted the inference to be drawn is for the jury, and in such a case the whole question as to what the contract was should be submitted to the jury under proper instructions." In Carstens Packing Co. v. Sterne & Son Co., 286 Ill. 355, it is said at pages 357 and 358: "It is true that where the construction of a written contract depends not only upon the meaning of the words employed but also upon extrinsic facts or the construction which the parties themselves have placed upon it, which is to be proved as any other fact, if the facts so proved are controverted then the question as to what the contract was is a mixed one of law and fact, to be submitted to the jury." To the same effect is Schneider v. Neubert, 308 Ill. 40, 44. Hartley v. Red Ball Transit Co., 344 Ill. 534, 542. The Chicago Daily News, Inc. v. Kohler, 360 Ill. 351, 363, 364. We are of the opinion that the court properly submitted the issue to the jury and that its verdict is not contrary to the manifest weight of the evidence.

Complaint is made that the court erred in giving defendant's instruction, and the only instruction offered by the defendant, which is as follows: "The court instructs the jury that if you find by a preponderance of the evidence that the plaintiff was only to be compensated in the event the Board was authorized by the voters of Community Unit District No. 1 to locate a

school house site, purchase a school site, build a school house and issue bonds in the sum of $630,000, then you may take this fact, if it be a fact, into consideration in arriving at your verdict."

 This instruction did not direct a verdict, but merely stated the defendant's theory of the case, namely, the employment was merely for the project under consideration as set forth in the minutes of the Board meeting held on November 3, 1949. It was proper and indeed necessary that the court instruct the jury as to the theories of each party to the cause. In Schneider v. Neubert, 308 Ill. 40, at page 44, it is said: "Where the court is unable to determine the true agreement of the parties and it is necessary for the jury to determine what the contract is, the court should submit the question of fact to the jury under proper alternative instructions as to the construction to be given to the contract in the event of each possible finding of fact."

The plaintiff tendered two instructions which were given to the jury by the court, one advising the jury that if it believed that the defendant in advising bidders they should include in the amount of their bid 1% of the bonds issued, this fact would not of itself justify the defendant in refusing to pay the plaintiff in accordance with its agreement as set forth in the resolution. The other instruction advised the jury that it was immaterial as to the face value of the bonds issued by the district, provided the jury did find from a preponderance of the evidence that the defendant did issue bonds in a certain amount which had been sold and delivered.

Thus the court did advise the jury by "proper alternative instructions as to the construction to be given to the contract in the event of each possible finding of fact."

The judgment of the Circuit Court of Christian County is affirmed.

Judgment affirmed.