TDC DEVELOPMENT CORPORATION *et al.*, Plaintiffs-Appellees, v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF OTTAWA, Defendant-Appellant.

First District (1st Division)   No. 1—89—0317

Opinion filed September 24, 1990.

Martin, Craig, Chester & Sonnenschein, of Chicago (Thomas H. Donohoe and William A. Kummerer, of counsel), for appellant.

Altheimer & Gray, of Chicago (Lionel G. Gross and William P. Caputo, of counsel), for appellees.

JUSTICE MANNING delivered the opinion of the court:

This is an appeal from an order entered December 6, 1988, which granted judgment on the pleadings under the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(e)) in favor of plaintiffs in an action to recover money for certain real estate taxes allegedly owed by defendant pursuant to the terms of a written agreement. The question presented is whether the trial court improperly granted judgment on the pleadings in favor of plaintiffs by finding that the agreement's terms were a "matter of contract and clearly stated within the contract."

On February 29, 1980, defendant, First Federal Savings and Loan Association of Ottawa (Ottawa), loaned money to plaintiff, TDC Development Corporation (TDC), for the construction of a 96-unit condominium development to be built upon certain real estate that was held in a land trust which listed TDC as the sole owner of the beneficial interest. By June 1982, the loan was alleged to be in default and the project, which remained uncompleted and required additional funds to cover the costs of completion, was the subject of litigation between Ottawa, TDC and other parties.

On June 14, 1982, Ottawa, TDC, the owners of the stock of TDC (Sam Pancotto, Norman Edidin, Gary Edidin and Milton Levenfeld), who are plaintiffs and parties to this appeal, and the land trust and the project contractor, neither of whom are parties before this court, entered into an "Agreement" under which the lender, Ottawa, agreed to provide additional funds to complete the project. Ottawa also agreed to

pay TDC and to assume specific obligations and liabilities under the project in consideration of TDC and other interested parties performing certain conditions, in particular, TDC's promise to convey title to the real estate or assign its beneficial interest to Ottawa or a nominee selected by Ottawa.

Title to the subject real estate was conveyed to Ottawa and it was required to pay $49,033.15 for real estate taxes due on the property for the years 1980-82. Ottawa deducted this amount from the sum due to TDC under the terms of the agreement. Consequently, plaintiffs sued Ottawa alleging, *inter alia*, that Ottawa had assumed the full responsibility for payment of the real estate taxes pursuant to the agreement. Ottawa denied liability; however, the trial court entered judgment on the pleadings in the amount of $49,033.15, plus interest on behalf of plaintiffs. We reverse and remand.

■■■ It is well established that a motion for judgment on the pleadings, as provided in section 2—615(e) of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(e)), tests the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by his complaint or, alternatively, whether the defendant by his answer has set up a defense that would entitle him to a hearing on the merits. (*Teeple v. Hunziker* (1983), 118 Ill. App. 3d 492, 496, 454 N.E.2d 1174; *Hartlett v. Dahm* (1981), 94 Ill. App. 3d 1, 3, 418 N.E.2d 44; *David v. J. Elrod Realtors on Devon, Inc.* (1979), 75 Ill. App. 3d 449, 451, 394 N.E.2d 583; see also *Carebuilt Corp. v. Horsting* (1963), 40 Ill. App. 2d 280, 189 N.E.2d 364; *Milanko v. Jensen* (1949), 404 Ill. 261, 88 N.E.2d 857.) In deciding the motion, the trial court must examine all pleadings on file, taking as true the well-pleaded facts, and reasonable inferences to be drawn therefrom, set forth in the opposite party's pleadings (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552-53, 359 N.E.2d 113), to determine whether a material factual dispute exists or whether the controversy can be resolved strictly as a matter of law. See *Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, 427 N.E.2d 317; *David*, 75 Ill. App. 3d 449.

■ It is well settled that where such examination of the pleadings discloses the existence of issues of one or more material facts, evidence must be taken to resolve such issues (*Bank & Trust Co. v. Arnold N. May Builders, Inc.* (1980), 90 Ill. App. 3d 454, 456-57, 413 N.E.2d 183; see also *Heller v. Goss* (1980), 80 Ill. App. 3d 716, 400 N.E.2d 70), and the motion for judgment on the pleadings must be denied (*Triangle Sign Co. v. Weber, Cohn & Riley* (1986), 149 Ill. App. 3d 839, 843, 501 N.E.2d 315; see generally *Christensen v. Wick Building Systems, Inc.* (1978), 64 Ill. App. 3d 908, 381 N.E.2d 1189; *Allis-Chalmers Credit Corp. v. Mc-*

*Cormick* (1975), 30 Ill. App. 3d 423, 331 N.E.2d 832; *Affiliated Realty & Mortgage Co. v. Jursich* (1974), 17 Ill. App. 3d 146, 308 N.E.2d 118), since a judgment on the pleadings is proper if only questions of law and not of fact exist after the pleadings have been filed. *Walker*, 65 Ill. 2d at 552-53.

In deciding the propriety of an order granting judgment on the pleadings, the reviewing court must ascertain whether the trial court correctly determined that no material issue of fact was presented by the pleadings (*Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 123, 435 N.E.2d 827), and if there was no such issue, whether judgment was correctly entered. *Teeple v. Hunziker*, 118 Ill. App. 3d at 497. See also *Urbaitis v. Commonwealth Edison* (1989), 185 Ill. App. 3d 616, 540 N.E.2d 352.

In the case at bar, the trial court found that the terms as used in the agreement were clear and unambiguous and best stated the parties' intentions, where it stated:

"THE COURT: Notwithstanding anything to the contrary contained herein, Ottawa agrees to assume responsibility for the following obligations related to the Project to the extent to which such obligations are or become liens upon the Project, up to the amounts designated: (1) Those claims, liens, and title exceptions found in the Commitment for Title Insurance, attached hereto as Exhibit B, except item number 35 on page 10 thereof, up to the amounts set forth therein—.

So the questions are whether the taxes for 1980, 1981, and 1982 are or will become liens upon the Project, and whether they are in Exhibit B—and whether they are covered by the provision 'up to the amounts set forth therein.'

It seems to me that tax obligations are liens, and it seems to me that the intent of the parties would take that into account.

It seems to me, also, that within Schedule B, which is attached and in connection with the Project, it states that taxes for the years 1980, 1981 and 1982 are liens which somebody is going to have to be responsible for at some point.

This Agreement was made on June 14, 1982, and so, obviously, that would be on the mind of the person who entered into the Agreement.

*** [I]t seems to me that where the parties wanted to except certain things within Schedule B, he knew how to do that—So the parties, both sophisticated in the business that they were in, had the ability to specifically except things if they wished to—."

It is well settled that the meaning to be given to the language

or terms used in an agreement between the parties is governed by contract law. Our courts have determined that where contract language is unambiguous it should be given its plain and ordinary meaning (*Reynolds v. Coleman* (1988), 173 Ill. App. 3d 585, 593, 527 N.E.2d 897), without resorting to rules of construction (*P.A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1986), 112 Ill. 2d 196, 203, 492 N.E.2d 1288), and without the court searching for ambiguity where there is none. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4, 429 N.E.2d 1203.) Moreover, construction of a contract presents a question of law (see *Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 424 N.E.2d 1271), for the trial court's determination where the parties have attached no peculiar or unusual meaning to the words (*Ahlvers v. Terminal R.R. Association* (1975), 31 Ill. App. 3d 166, 171-72, 334 N.E.2d 329). Where, however, the language leaves the true intent of the parties in doubt, it is necessary to receive extrinsic evidence as the question becomes one of fact for the trier of fact. (See generally *Hagerty, Lockenvitz, Ginzkey & Associates v. Ginzkey* (1980), 85 Ill. App. 3d 640, 406 N.E.2d 1145.) Stated another way, the determination of whether a document's language is ambiguous is a matter of law which must be decided by the trial court in the first instance. *Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 974, 418 N.E.2d 59; see also *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 427 N.E.2d 1295; *National Tea Co. v. American National Bank & Trust Co.* (1981), 100 Ill. App. 3d 1046, 427 N.E.2d 697.

TDC contends that the plain and ordinary language of the agreement conclusively establishes that Ottawa assumed liability for all of the title exceptions which were or could become liens and were described in the "Commitment for Title" unless it specifically stated otherwise; and since the tax report pages were attached as a title exception and Ottawa failed to specifically state that it was not assuming liability for that attachment, Ottawa has the liability for and obligation to pay the real estate taxes for the years 1980, 1981 and 1982.

Conversely, Ottawa first contends that open-ended liability, including liability for taxes, was not within the parties' intent in making the agreement; but, if the terms are to be given their plain meaning and judgment is to be entered in any amount, it must be entered on its behalf for a definite amount as described in the title commitment "up to the amounts designated," which equates to $5,641.22. Ottawa next asserts that the extraordinary high taxes were imposed on the land once the project was completed, as the increase in the taxes resulted from the assessment being changed from one on the partially completed project to a fully completed one, and urges that it was not its intent to be

liable for the increase in taxes above the amount shown in the title commitment resulting from the property's designation from unimproved to improved.

Alternatively, Ottawa urges that the meaning to be attributed to the phrases "up to the amounts designated" and "up to the amount set forth therein" is ambiguous so as to preclude judgment on the pleadings. The agreement itself does not define the terminology in question. While the parties point to definitions of the words used singularly, neither party has cited to, nor has our research disclosed, conclusive authority with respect to the definition of the phrases. The phrases are found in that part of the agreement regarding the obligations to be assumed by Ottawa and states:

> "Notwithstanding anything to the contrary contained herein, OTTAWA agrees to assume responsibility for the following obligations related to the project *to the extent which such obligations are or become liens* upon the Project, *up to the amount designated*: (1) those claims, liens and title exceptions set forth in the commitment for Title Insurance, attached hereto as Exhibit B, except item number 35 on page 10 thereof, *up to the amounts set forth therein*, (2) claims of Commonwealth Edison, up to a maximum of $15,633.00, and (3) claims of the Condominium Home Owner's Association for unpaid assessments due to be paid by the developer, up to a maximum of $8,844.64. All other claims or obligations, attributable to the period of time prior to the date of conveyance provided for in paragraph 2a, which are or become liens upon the project shall be the obligation of TDC." (Emphasis added.)

We have reviewed the agreement and the pleadings before the trial court, and in our opinion the trial court's finding that the terms in the agreement, which pertained to Ottawa's obligation to assume certain liens that presumably included the real estate taxes, were clearly stated in the contract and, thus, unambiguous was error. Moreover, we believe it was improper for the trial court to ascertain its own meaning of the phrases that were capable of being understood in more than one sense and draw its own inferences of the parties' intent under the agreement without evidence of extrinsic facts and circumstances to resolve the factual dispute.

The parties presented in their respective pleadings and memoranda before the trial court several assertions which demonstrate that numerous interpretations can be attributed to the terms as used in the agreement. One interpretation implies that Ottawa is liable only for the exact amounts disclosed in the title commitment as the defendants intended to

limit their liability only to "the amounts set forth [therein]" in the title commitment in those exceptions. Another interpretation suggests that Ottawa is liable for the total amount of the taxes, whatever that amount might be, on the premise that the amount are liens or are capable of becoming liens and that the amount is designated since the taxes are fixed at a given time by the governmental agency that imposes such taxes.

The title commitment, which is attached to and made a part of the agreement, discloses, besides the taxes, four items which can be described as "liens" with "amounts designated": item No. 32, a subcontractor's claim for lien in the amount of $1,287.60; item No. 33, a subcontractor's claim for lien in the amount of $950.18; item No. 34, a subcontractor's claim for lien in the amount of $1,390.50; and item No. 36, a claim for mechanic's lien in the amount of $6,764.11. The tax exceptions are described on the tax report pages, also attached to and made a part of the agreement, which is dated June 8, 1982, and states that the property is subject to taxes for 1980, 1981 and 1982. There are "amounts designated" but only for 1980 and 1981, as follows:

|      | Parcel 1     | Parcel 2  |
|------|--------------|-----------|
| 1980 | $2,353.00    | $682.34   |
| 1981 | $2,033.84    | $572.04   |

which totals to $5,641.22.

As noted by the trial judge and evidenced by the document itself, all of the exceptions described in the agreement explicitly state the "amounts designated" and "the amounts set forth therein" in numeric figures. Nowhere in the agreement is the amount of $49,033.15 shown in unambiguous or unequivocal terms. However, the agreement does make a reference to the "taxes for the years 1980, 1981 and 1982." Consequently, we believe that a factual dispute exists as to the meaning to be attributed to the phrases at issue.

In addition, we find that a factual dispute exists as to the meaning to be attributed to the term "lien." Although the agreement limits Ottawa's liability to those obligations which are or will become liens, the tax pages only show that the 1980 taxes had already been forfeited and therefore were presumably liens upon the project. However, there is nothing shown in the pleadings to demonstrate that the 1981 taxes had become liens, and the 1982 taxes were not even scheduled to become delinquent for almost a year after the tax report was printed.

■ ■ Language that is ambiguous when it is capable of being understood in more than one sense, as is the situation presented here (see *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 998, 991,

436 N.E.2d 663), or because of indefiniteness of language or expression (see *Inland Construction Co. v. Home Indemnity Co.* (1983), 113 Ill. App. 3d 558, 559, 447 N.E.2d 1023), should be submitted to and resolved by the trier of fact to ascertain the true meaning of the contract. (See *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 414 N.E.2d 1152; *Lichtenstein v. Anvan Co.* (1978), 62 Ill. App. 3d 91, 378 N.E.2d 1171; *Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57; *Bertlee Co. v. Illinois Publishing & Printing Co.* (1943), 320 Ill. App. 490, 52 N.E.2d 47.) Specifically, the meaning of particular words raises a question of fact for the jury where the words are of estimate or probable distance or amount. (See, *e.g., Geiger v. Kaestner* (1909), 148 Ill. App. 529.) Where the question is submitted to the jury to determine what the contract is, the court should submit the question of fact to the jury under proper alternative instructions as to the construction to be given to the contract in the event of each possible finding of fact. See *DuHamel v. Board of Education of Community Unit School District No. 1* (1955), 7 Ill. App. 2d 487, 130 N.E.2d 10; *Schneider v. Neubert* (1923), 308 Ill. 40, 139 N.E. 84.

■ We conclude, therefore, based upon our review of the pleadings before the court at the time of entry of the judgment that there existed material issues of fact rendering judgment on the pleadings for either party improper since the language in the agreement is capable of being understood in more than one sense. Ottawa has alleged that TDC knew it did not intend to assume open-ended liability for payment of the taxes beyond that stated in the agreement, and TDC has denied such an understanding. Because the terms used in the agreement were open to more than one reasonable interpretation, evidence of extrinsic facts and circumstances is admissible to aid the trier of fact on remand in its interpretation of the agreement and to determine the true intent of the parties. *Inland Construction*, 113 Ill. App. 3d at 559; see also *Kokinis v. Kotrich* (1979), 74 Ill. App. 3d 224, 392 N.E.2d 697; *Standard Steel & Wire Corp. v. Chicago Capital Corp.* (1975), 26 Ill. App. 3d 915, 326 N.E.2d 33.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded.

Reversed and remanded.

BUCKLEY, P.J., and O'CONNOR, J., concur.