James E. BAKER, on behalf of himself and all other persons similarly situated, Plaintiff–Appellant,

v.

AMERICA'S MORTGAGE SERVICING, INCORPORATED and Resolution Trust Corporation, in its capacity as Receiver for Standard Federal Savings Bank of Gaithersburg, Maryland, Defendants–Appellees.

No. 94–2807.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1995.

Decided June 23, 1995.

Kristi L. Browne, Lawrence Walner, Julie L. Murphy, Robert J. Walner, Walner & Associates, Daniel A. Edelman (argued), Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, Michelle A. Weinberg, O. Randolph Bragg, Edelman & Combs, Chicago, IL, Francine Schwartz, Arlington Heights, IL, for plaintiff-appellant.

Damon E. Dunn, Wilson P. Funkhouser (argued), Barat S. McClain, Levin & Funkhouser, Chicago, IL, for defendants-appellees.

Before BAUER and COFFEY, Circuit Judges, and CRABB, District Judge.[1]

CRABB, District Judge.

This appeal raises a question of the legal calculation of late charges imposed for delinquent installment payments under a mortgage contract. James E. Baker appeals the district court's grant of summary judgment for defendants on his state law breach of contract and consumer fraud claims, contending among other things that the district court did not have jurisdiction over the action. We conclude that there was jurisdiction and that summary judgment was proper because defendants established as a matter of law that the method by which Baker's late charges were calculated did not violate either the terms of his mortgage or the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS § 505/2 (West 1992).

## I. FACTS

When Baker bought his home, he assumed a fixed-rate mortgage and note written on a standard form issued and guaranteed by the Department of Veterans Affairs and serviced by defendant America's Mortgage. The mortgage contract provides that if payments are delinquent, America's Mortgage may impose a late charge of up to 4% of Baker's monthly "installment." At some point, Baker fell behind in his monthly payments and was assessed late charges, calculated by America's Mortgage as 4% of Baker's aggregate monthly payment, which includes payments toward not only principal and interest, but also taxes and insurance. Baker filed a putative class action in Illinois circuit court, contending that under the terms of his mortgage contract, America's Mortgage was entitled to calculate late fees only on his monthly payments toward principal and interest. He named America's Mortgage and its parent company, Standard Federal Savings Bank, as defendants.

While the case was pending in state court, the Resolution Trust Company was appointed receiver of Standard Federal Savings Bank, filed a timely notice of substitution, and removed the case to the Northern District of Illinois federal court pursuant to 12 U.S.C. § 1441a($l$)(3)(A), which authorizes the RTC to remove any action to federal court if it is brought "against the institution or against the [RTC] as ... receiver of such institution." *See also* 12 U.S.C. § 1441a($l$)(1) ("any civil action, suit, or proceeding to which the [RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding"). The RTC becomes a party to a case when it is "deemed substituted ... for a party upon the filing of a copy of the order appointing [the RTC] as ... receiver for that party ..." 12 U.S.C. § 1441a($l$)(3)(B).

The removed case was assigned originally to Judge Norgle, but reassigned later to Judge Zagel as a case related to one pending before Judge Zagel. Baker filed a notice of voluntary dismissal of the RTC and a motion to remand, which Judge Zagel denied. Judge Zagel expressed doubt that Baker could dismiss the RTC voluntarily, given the fact that he held himself out as representative of a class. Unknown to the parties until Baker lodged his appeal in this court, a deputy clerk had entered a minute order under Judge Norgle's name several days after the case had been reassigned to Judge Zagel, purporting to dismiss the RTC from the case. Copies of the order were never sent to counsel and nothing in the record indicates that Judge Zagel was aware of the order.

Defendants filed a motion for summary judgment. Their proposed facts were undisputed because Baker failed to comply with the district court's local rules on procedures for opposing such motions. Judge Zagel granted the motion, but it was not final be-

---

1. The Honorable Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, sitting by designation.

cause the issue of Baker's status as a purported class representative was still unresolved. *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 623 (7th Cir.1986). Upon motion of defendants, Judge Zagel struck the class allegations in Baker's complaint and this appeal followed.

## II. DISCUSSION

Baker's jurisdiction challenge rests on his argument that his notice of voluntary dismissal of the RTC was all that was required to take the RTC out of the suit; once this was accomplished, the district court was required to remand the action to state court, either because it lacked subject matter jurisdiction, *see* 28 U.S.C. § 1447(c), or because it should have declined to exercise supplemental jurisdiction over the case, *see* 28 U.S.C. § 1367(c).

■ The first question is whether the RTC was ever properly dismissed from this lawsuit; if not, § 1441a($l$) clearly authorized the district court to hear this case. Fed. R.Civ.P. 41(a)(1) permits dismissal as of right but provides that all voluntary dismissals by plaintiffs are "subject to the provisions of Rule 23(e)," which proscribes the dismissal of a class action "without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Reading the two rules together makes clear that although an ordinary law suit requires only notice to the court to effect a voluntary dismissal of the suit, a class claim cannot be dismissed or settled without approval of the court. *Donovan v. Robbins*, 752 F.2d 1170, 1176 (7th Cir.1985). *See also Glidden v. Chromalloy American Corp.*, 808 F.2d at 625–26; *Simer v. Rios*, 661 F.2d 655, 665–66 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); 9 Charles A. Wright and Arthur R. Miller,

*Federal Practice & Procedure* § 2363, p. 256 (2d ed. 1995). Further, Rule 23(e) "presumptively applies to all complaints containing class allegations," including proposed class actions not yet certified by the district court. *Glidden*, 808 F.2d at 626. Although *Glidden* and *Rios* hold that notice to class members is not necessary in every situation involving the dismissal of noncertified class claims, those cases and the rules of civil procedure contemplate, at a minimum, judicial review and approval of any dramatic change such as a dismissal. Therefore, Baker could not dismiss the RTC unilaterally as he purported to do in Judge Norgle's court.[2]

■ The minute order purporting to dismiss the RTC did not cure Baker's failure to effect the dismissal. Ordinarily, district court orders are to be given full effect from the time they are entered, but the unusual circumstances in which the minute order was entered warrant a departure from the general rule. It is common procedure in the Northern District of Illinois for deputy clerks to enter minute orders dismissing a case or defendant as an automatic response to a voluntary notice filed pursuant to Rule 41(a)(1). These orders are entered primarily to alert clerks to dismissal of a lawsuit; more often than not, the judge will never see the order. The procedure may work under most circumstances, but it failed in this instance because plaintiff lacked the authority to voluntarily dismiss the RTC without the court's approval. The minute order is no more effective than the notice itself.

■ Baker raises two additional reasons for not reaching the merits of the case, but they require only brief discussion. The first is that even if Baker's notice of dismissal did not effectuate dismissal of the RTC, Judge Zagel should have approved the RTC's dismissal because it was in the class members' best interests to dismiss the claims against

---

**2.** Because we have concluded that Baker could not voluntarily dismiss the RTC as a defendant without court approval because he was bringing his suit as a class action, we have assumed, without deciding, that Rule 41(a)(1) applies not only to dismissals of entire lawsuits but also to dismissals of all claims against one particular defendant, as was the case here. The rule refers to dismissals of "actions." This court has not yet defined the term in the context of Rule 41(a)(1)(i), although we have both assumed and suggested that its use of the term "action" refers to partial dismissals, that is, dismissals of all claims against a particular defendant or set of defendants. *See Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 139 n. 1 (7th Cir.1978); *Winterland Concessions Co. v. Smith*, 706 F.2d 793, 796 (7th Cir.1983).

the insolvent defendant. Because Baker failed to raise this argument properly in the district court, it cannot be considered here. His motion for a remand was premised on the allegation that the RTC was no longer a party to the litigation, not on a request that the district court approve the RTC's dismissal. Although he brought up the issue in his reply brief ("[a]ssuming *arguendo* that leave of court is required to dismiss one of the defendants, the Court should ratify dismissal of the RTC"), issues or requests raised for the first time in a reply brief are deemed waived. *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 665–66 (7th Cir.1995); *Gomez v. Greer*, 896 F.2d 252, 254 (7th Cir.), *cert. denied*, 498 U.S. 944, 111 S.Ct. 355, 112 L.Ed.2d 318 (1990). Baker's failure to dismiss the RTC answers all questions as to the district court's jurisdiction.

█ As his second reason why we should not reach the merits, Baker would have us certify to the Illinois Supreme Court the questions whether America's Mortgage breached the contract or the Illinois Consumer Fraud Act and whether the meaning of an ambiguous contract is always a question of fact. It is not appropriate to do so. The answers to the state law questions are reasonably clear. There may be difficulties in applying Illinois law to the particular facts of a case, but those are not problems which the certification procedure is intended to address. *See Woodbridge Place Apartments v. Washington Square Capital, Inc.*, 965 F.2d 1429, 1434 (7th Cir.1992) (construction of a mortgage contract is a "particularized inquir[y]" and therefore usually inappropriate for certification).

We turn then to the core question raised in the class action suit: the meaning of the term "installment" in Baker's mortgage. The term appears at several points in Baker's mortgage contract, the first in the opening paragraph of the contract, which the district court referred to as the "whereas clause" in *Moore v. Lomas Mortgage USA, Inc.*, 796 F.Supp. 300, 301 (N.D.Ill.1992) (Zagel, J., presiding), a previously issued opinion in a case with facts nearly identical to those presented in this case, whose reasoning is incorporated by reference in the summary order granting defendants' motion for summary judgment in this case. The whereas clause provides that "whereas the Mortgagor is justly indebted to the Mortgagee" in a certain amount, with interest, "the same principal and interest being payable in monthly *installments*" of a certain amount (emphasis added). The term next appears in a prepayment provision on the contract's second page, in which the mortgagee is given the privilege of prepaying the whole indebtedness or any part "not less than the amount of one *installment*, or one hundred dollars ($100.00), whichever is less." The provision continues that "[p]artial prepayment, other than on an *installment* due date, need not be credited until the next following *installment* due date or thirty days after such prepayment, whichever is earlier" (emphases added). The term appears for the third time in the late charge provision, which is preceded immediately by provisions for the making and allocation of monthly payments for principal, interest, taxes and insurance, with the aggregate of the amounts to be paid in a single prepayment each month. The mortgage provides that "any deficiency in the amount of any such aggregate monthly payment" constitutes a default and that, at "Mortgagee's option, Mortgagor will pay a 'late charge' not exceeding four per centum (4%) of any *installment* when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments ..." (emphasis added). As for the note, the term "installment" appears in the opening provision ("the said principal and interest to be payable in monthly *installments*") (emphasis added); in a prepayment provision precisely the same as that appearing in the mortgage and noted above; and in an acceleration clause ("If there be any deficiency in the payment of any such *installment* of principal and interest ... the holder of this note may ... declare all the unpaid principal and accrued interest of said note immediately due and payable....") (emphasis added).

█ We review the district court's grant of summary judgment *de novo*. *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d

1331, 1333 (7th Cir.1988). The interpretation of a contract is an issue particularly well-suited for resolution by summary judgment. *Id.* The interpretation of a mortgage contract guaranteed by the Department of Veterans Affairs is an issue of state law, except insofar as those terms are dictated by the federal statutes and VA regulations governing such mortgages. *See, e.g., La Throp v. Bell Fed. Sav. & Loan Ass'n,* 68 Ill.2d 375, 12 Ill.Dec. 565, 370 N.E.2d 188 (1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978). *Compare Mortgage Associates, Inc. v. Cleland,* 653 F.2d 1144 (7th Cir.1981) (federal law preempts on issues of VA's obligations as guarantor and the laws of foreclosure).

Following the Illinois rule that requires the court to determine whether a contract is ambiguous, *Wilson v. Illinois Benedictine College,* 112 Ill.App.3d 932, 937, 68 Ill.Dec. 257, 263, 445 N.E.2d 901, 907 (1983); *Nerone v. Boehler,* 34 Ill.App.3d 888, 890–91, 340 N.E.2d 534, 536 (1976), Judge Zagel found that the use of the term "installment" in the late fee provision rendered that provision ambiguous. Ambiguity exists where a term is one that is "reasonably and fairly susceptible to more than one meaning," *Lenzi v. Morkin,* 116 Ill.App.3d 1014, 1016, 72 Ill.Dec. 414, 416, 452 N.E.2d 667, 669 (1st Dist.1983), *aff'd,* 103 Ill.2d 290, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984). In the late charge provision, the word follows on the heels of a reference to aggregate monthly payments. That might seem to end the inquiry but for the fact that the whereas clause of the mortgage is the only point at which "installment" carries an explicit reference to a particular payment. In that clause, "installment" refers to Baker's monthly payment on principal and interest only. No later use of the term carries with it any different explicit definition.

■ Under Illinois law, if a contract is ambiguous, its interpretation is a question of law for the court as long as the extrinsic evidence bearing on the interpretation is undisputed. *Lumpkin v. Envirodyne Industries, Inc.,* 933 F.2d 449, 456 (7th Cir.), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *LaSalle Nat'l Bank v.*

*General Mills Restaurant Group, Inc.,* 854 F.2d 1050, 1052 (7th Cir.1988); *City of Clinton, Ill. v. Moffitt,* 812 F.2d 341, 344 (7th Cir.1987) (citing *Nerone v. Boehler,* 34 Ill. App.3d at 890–91, 340 N.E.2d at 536; *Ridenhour v. Mollman Publishing Co.,* 66 Ill. App.3d 1049, 1051, 23 Ill.Dec. 36, 37–38, 383 N.E.2d 803, 804–05 (1978)). Further, where the ambiguity in a contract arises only from the particular meaning of terms used in the contract, the meaning of the terms and the contract is a question of law. *USG Interiors, Inc. v. Commercial & Architectural Products, Inc.,* 241 Ill.App.3d 944, 182 Ill.Dec. 277, 279, 609 N.E.2d 811, 813 (1993). Judge Zagel considered extrinsic evidence, which consisted primarily of Veteran's Administration regulations and the VA's interpretation of those regulations. Baker did not dispute the use of this evidence or offer any evidence of his own. On appeal however, Baker contends that the construction of the contract was a question of fact and identifies several Illinois cases holding that the interpretation of an ambiguous contract term is a question of fact. *See, e.g., Farm Credit Bank v. Whitlock,* 144 Ill.2d 440, 163 Ill.Dec. 510, 581 N.E.2d 664 (1991); *Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990); *TDC Development Corporation v. First Federal Savings & Loan Ass'n of Ottawa,* 204 Ill. App.3d 170, 149 Ill.Dec. 446, 561 N.E.2d 1142 (1990). In each of these cases, however, interpretation hinged on an evaluation of disputed extrinsic evidence regarding the circumstances surrounding the contract and the parties' intent. In the cited cases, it was clear that the task of resolving the extrinsic factual disputes would collapse into that of construing the ambiguous contract, which explains why the cases seem to conflate the two issues. No such questions of extrinsic fact arise in this case. Judge Zagel looked only to the regulatory scheme covering the VA home loan program and the VA's interpretation of those regulations to determine whether they shed light on the meaning of "installment."

■ The language of the late charge provision in Baker's mortgage contract tracks

that used in 38 C.F.R. § 36.4311(d), which provides:

> Interest in excess of the rate reported by the lender when requesting evidence of guaranty or insurance shall not be payable on any advance, or in the event of any delinquency or default: *Provided,* That a late charge not in excess of an amount equal to 4 percent on any installment paid more than 15 days after due date shall not be considered a violation of this limitation.

Like the ambiguous contract, the regulation permits the lender to impose a late charge not exceeding 4% of any "installment" but does not indicate whether the term refers to aggregate monthly payments or something else. *But cf.* 38 C.F.R. § 36.4308(h) (defining a delinquency to include "all installment payments (principal, interest, taxes, insurance, advances, etc.) due and unpaid"). Citing a 1948 VA Solicitor opinion letter interpreting the relevant regulation in effect at the time (which also used the same language) as authorizing a 4% late fee calculated on the basis of aggregate monthly payments and a 1991 letter from the VA's Loan Guaranty Service Director indicating that the VA was adhering to the same interpretation over 40 years later, America's Mortgage argues that the VA regulations and opinions are dispositive of the meaning of Baker's mortgage terms.

The question is not so straightforward as America's Mortgage suggests. The regulations do not identify the referent for "installment"; rather, they contain the same ambiguity. The opinion letters express the VA's interpretations of its regulations but do not address the meaning to be given to a particular mortgage contract form. As the VA interprets the regulations, they permit but do not require the mortgagee to exact a late charge of up to 4% of the aggregate monthly payment. The mortgagee is free to impose a late fee of a lesser amount. It would not offend any VA regulation to construe the contract Baker's way, even if the regulations mean what the VA says they mean. The regulations do not resolve the meaning of "installment"; its correct interpretation remains elusive.

■ In this circumstance, Baker would resort to the rule of construction that ambiguity in a written contract should be construed against the drafter. However, this canon of construction (*contra proferentem*) is a rule of last resort, a "tie-breaker" of sorts, that comes into play only when neither the extrinsic evidence nor other methods of construction can resolve the ambiguity. *Residential Marketing Group v. Granite Investment Group,* 933 F.2d 546, 549 (7th Cir. 1991); *Harbor Insurance Co. v. Continental Bank Corp.,* 922 F.2d 357, 366 (7th Cir.1990); *Lippo v. Mobil Oil Corp.,* 776 F.2d 706, 714–15 n. 15 (7th Cir.1985).

■ As used in the contract, "installment" can be understood only with reference to the context in which it appears. Under this contextual interpretive approach (sometimes referred to as *noscitur a sociis*), the whereas clause simply concerns itself with the loan and the subset installment that is to be applied toward principal and interest on that loan. However, in the late charge provision, the term's meaning is revealed by the immediately preceding reference to "aggregate monthly payments," and by the fact that late charges can be imposed for any deficiency in the aggregate monthly payment. Simply put, "installment" in the late charge provision refers to the aggregate monthly payment toward principal, interest, taxes and insurance.

In conformance with this approach, the district court adopted an interpretation that gives effect to as much of the contract's language as possible. The court determined that the unmodified term "installment" must refer to aggregate monthly payments, otherwise, the modifier, "of principal and interest," would be superfluous. *Moore v. Lomas Mortgage,* 796 F.Supp. at 305. We add that a reasonable mortgagor would more likely than not interpret the term "installment" as used in the late charge provision to mean the total amount required to be paid each month in a lump sum.

Under Baker's construction of the mortgage, the whereas clause provides the definition of the term "installment" (as principal and interest), and every subsequent use of the term incorporates that definition; be-

cause the late charge provision uses both the term "aggregate monthly payment" and "installment," they must mean different things. This argument rests on the idea that "installment" has some sort of esoteric meaning. It does not. Generally speaking, the term refers to a method of payment on a debt. *See Webster's College Dictionary* 698 (1991) (defining installment as "any of several parts into which a debt or other sum is divided for payment at successive fixed times"); *Black's Law Dictionary* 798 (6th ed. 1990) (defining installment as a "partial payment of a debt or collection of a receivable," "different portions of the same debt payable at different successive periods as agreed," and "partial payments on account of a debt due"). In the abstract, "installment" refers only to the generic concept of a monthly payment but does not indicate anything about the amount of the payment or what the payment is being applied toward. It is true that the contract is somewhat haphazard in its interchangeable use of the two synonymous terms "(monthly) payment" and "installment," but this imprecision is not dispositive. In the late charge provision, the only question is whether the term refers to the aggregate monthly payment or to that portion of the aggregate monthly payment to be applied to principal and interest only. It is dispositive that the immediately preceding reference is to aggregate monthly payments.

Baker makes one last argument: that under Illinois law, when an ambiguity is created by the interplay of two provisions, one of which is typewritten, the meaning of the typewritten term is given precedence. As a general rule, this is correct, *Farmers & Mechanics Bank v. Davies*, 97 Ill.App.3d 195, 201, 52 Ill.Dec. 655, 660, 422 N.E.2d 864, 869 (3d Dist.1981), but the rule is inapplicable in this case. The typed information to which Baker refers are amounts appearing in the whereas clause: the total indebtedness on the loan, the interest rate and the dollar amount of the monthly "installment" toward principal and interest. These dollar and percentage amounts are typed onto the preprinted form in the provided spaces. It is only the amounts that are typed; the word "installment" is not. Further, because it is permissible for the term "installment" to

have different meanings throughout the mortgage, depending on its context, this is not a situation involving a conflict between two provisions.

For the reasons stated above, we conclude that the sensible construction of "installment" as used in the late charge provision is that the term refers to the aggregate monthly payment of principal, interest, taxes and insurance. We agree with the district court that the Illinois Consumer Fraud Act is not violated by the late fees at issue here. The fees are imposed according to the terms of the mortgage contract. They are not "unwarranted," as Baker contends and they do not constitute a practice that is unfair, unethical or oppressive.

When America's Mortgage imposed a late charge calculated on the basis of Baker's aggregate monthly payment, it neither breached the mortgage contract nor violated the Illinois Consumer Fraud Act. The judgment of the district court is AFFIRMED.